Floyd E. FROST, Cheryl A. Frost, Aetna Casualty & Surety Company and The Standard Fire Insurance Company, Plaintiffs–Appellants and Cross–Appellees,

v.

SCHROEDER & COMPANY, INC., a Colorado corporation, Dale Arthur and Steven Schroeder, Defendants–Appellees and Cross–Appellants.

No. 93CA0520.

Colorado Court of Appeals,
Div. V.

May 19, 1994.

Pryor, Carney and Johnson, P.C., John L. Wheeler, Englewood, for plaintiffs-appellants and cross-appellees.

Stephen M. Munsinger, Denver, for defendants-appellees and cross-appellants.

Opinion by Judge HUME.

Plaintiffs Floyd E. and Cheryl A. Frost appeal the trial court's judgment insofar as it reduced their jury award by the amount of certain insurance proceeds that the court determined to be from a non-collateral source and refused to award them costs. Plaintiffs Aetna Casualty and Surety Company (Aetna) and The Standard Fire Insurance Company (Standard) appeal the trial court's dismissal of their claim for contribution. Defendants, Schroeder & Co., Dale Arthur, and Steven Schroeder, cross-appeal the trial court's order which restricted the jury's consideration of certain evidence. We affirm in part, reverse in part, and remand the cause for further proceedings.

In 1987, the Frosts purchased certain real property with the help of defendants Arthur and Schroeder, both employed by Schroeder & Co., a corporate realty company. The Frosts entered into a wrap-around purchase agreement, agreeing to make payments to the sellers, who, in turn, would make payments upon prior mortgage liens against the property. Homeowner's casualty and mortgage insurance premiums were included in the mortgage payments and were remitted by the mortgage company to Aetna and Standard. The parties to the transaction contemplated that the sellers' insurance policies would be assigned to the Frosts and that defendants were responsible for accomplishing that result.

Approximately one year after the contract was closed, the property was damaged by

fire. Subsequently, the Frosts discovered that the sellers' insurance policies had not been assigned to them. Under their contracts of insurance with the sellers, Aetna and Standard paid a total of $59,765.33 to the mortgagees of the property, which incidentally reduced the debt owed by the Frosts by that amount.

The sellers and the Frosts separately sued Aetna and Standard and defendants on several theories, including negligence in failing to perfect assignment of the insurance policies. Some claims were settled by stipulation and the remaining negligence actions were consolidated. In pretrial proceedings, the court ruled, as a matter of law, that Aetna and Standard were not negligent. After trial, the jury returned a verdict in favor of the Frosts and against the defendants for $74,000 and, after deductions for the Frosts' comparative negligence and the negligence of the sellers, the net jury award against defendants was $55,000. After offsetting the insurance proceeds as non-collateral source payments, the court entered a judgment for zero dollars.

## I.

The Frosts first contend that the trial court erred in applying the collateral source statute, § 13–21–111.6, C.R.S. (1987 Repl. Vol. 6A), to nullify their recovery. We agree.

### A.

Section 13–21–111.6 provides, in relevant part, that the court must reduce a verdict for damages in tort by the amount or to the extent that the recovering party has been indemnified or compensated by another in relation to the injury, damage, or death sustained, "except that the verdict shall not be reduced by the amount by which such person ... has been ... indemnified or compensated by a benefit paid as a result of a contract entered into and paid for by or on behalf of such person."

The question here is whether the indirect payment of insurance premiums by the Frosts through the sellers pursuant to the wrap-around agreement constitutes a "contract entered into and paid for by or on behalf of" the Frosts. We conclude that it does.

Section 13–21–111.6 was part of The Tort Reform Act of 1986, which was aimed at limiting double recoveries. However, by enacting this legislation, the General Assembly did not intend to deny compensation to which a claimant was entitled under a contract that he or someone on his behalf entered into and paid for with the expectation of receiving the benefits of that contract at some future time. The underlying purpose of excluding such contractual benefits is to allow recovery to a claimant who, through his or her own efforts, contracted for and purchased, either directly or indirectly, some type of insurance or other protection against accident-induced losses without penalizing such a person for his or her prudence and thereby providing a windfall for a culpable tortfeasor. *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070 (Colo. 1992).

The supreme court has construed the exception set out in § 13–21–111.6 as being "broad enough to cover contracts for which a plaintiff gives some form of consideration, whether it be in the form of money or ... services, with the expectation of receiving future benefits in the event they become payable under the contract." *Van Waters & Rogers, Inc. v. Keelan, supra* at 1079.

Here, the policy remained in force through the Frosts' efforts and their payments under the wrap-around agreement. They ultimately paid the insurance premiums and indirectly received the benefits of insurance coverage in the form of a reduced balance owing on the mortgages. Although the contract here is between the Frosts and the sellers, and the insurance companies neither consented to nor knew of any purported assignment of that insurance coverage, we see no reason why that circumstance should deprive the Frosts of their recovery. The purpose of the statute is met by the Frosts' entry into a valid contract and their payment of valuable consideration to protect themselves from loss, and the actions or knowledge of a third person should not affect their entitlement to the benefit of the statutory exception. *See Van Waters & Rogers, Inc. v.*

*Keelan, supra.* Accordingly, we conclude that the trial court erred in setting off the insurance proceeds against the jury verdict in favor of the Frosts.

### B.

The Frosts request that we also address whether and to what extent their settlement with Aetna and Standard in exchange for a release of various tort and contract claims could be set off against the Frosts' recovery from defendants. The Frosts contend that no offset can be allowed because Aetna and Standard have been determined not to be joint tortfeasors with defendants in connection with the assignment of insurance coverage. However, the trial court expressly declined to address that issue because it had been rendered moot by allowance of the collateral source offset for insurance proceeds.

Since that matter must be addressed by the trial court on remand, we decline to consider it for the first time in this appeal. *See Crown Life Insurance Co. v. April Corp.,* 855 P.2d 12 (Colo.App.1992).

### II.

The Frosts next contend that the trial court erred in not awarding them costs after they prevailed on their negligence claim. Although our disposition of the collateral source offset resolves this issue in the present posture of this case, we address it because it may arise in a different context on remand.

The trial court found that both parties' costs were reasonable, but declined to award costs to either because "neither ... prevailed in net recovery" after the Frosts' award was reduced by collateral source receipts.

Section 13–16–104, C.R.S. (1987 Repl.Vol. 6A) provides that a plaintiff who recovers debt or damages in an action shall be entitled to recover costs. *National Canada Corp. v. Dikeou,* 868 P.2d 1131 (Colo.App.1993).

█ A prevailing party is one who prevails on a significant issue in the litigation and achieves some of the benefits sought therein. *Odenbaugh v. County of Weld,* 809 P.2d 1059 (Colo.App.1990).

█ Here, the Frosts prevailed on their negligence claim against defendants and were awarded $55,000 in compensatory damages. That amount was then reduced by amounts received from sources which were unrelated to defendants' claims or defenses. In identifying a prevailing party for purposes of entitlement to an award of costs pursuant to § 13–16–104, the focus should be upon the countervailing claims and defenses asserted by the litigants, rather than upon incidental independent factors that may affect the ultimate monetary judgment.

Thus, we conclude that the trial court erred by considering non-collateral source receipts in determining whether the Frosts were prevailing parties who were entitled to their costs.

### III.

Next, Aetna and Standard contend that they have a valid claim for reimbursement of insurance proceeds they paid which we should consider on appeal. We reject this contention.

At trial, Aetna and Standard relied on a theory of contribution, which the trial court dismissed after determining that the two insurers were not joint tortfeasors who were entitled to recover contribution. The insurers now claim, although they did not plead this theory at trial or in post-trial motions, that the court's ruling transformed their claim into one for indemnity.

We view this issue as having been asserted for the first time on appeal and, therefore, decline to address it. *See Committee for Better Health Care v. Meyer,* 830 P.2d 884 (Colo.1992); *Wickland v. Snyder,* 39 Colo. App. 403, 565 P.2d 976 (1977).

### IV.

On cross-appeal, defendants contend that the trial court erred in restricting use of evidence of the Frosts' negligence to the issue of their credibility, rather than to the issue of comparative negligence. We disagree.

The trial court ruled that the Frosts' possible negligence in causing the fire was not

relevant to plaintiffs' claim for negligence predicated upon failure to assign the insurance policies. The court stated, in relevant part, that:

When you bring a negligence action and the claimed act of negligence is the failure to be given an assignment of an insurance policy, and the rights under the insurance policy arise, regardless of negligence, then the focus of that negligence has to be around the assignment, not around the fire.

Evidence is relevant if it has any tendency to make the existence of a material fact more or less probable than it would be without such evidence. Evidence lacking such probative value is irrelevant and inadmissible. CRE 401 & 402; *Kollodge v. Charnes*, 741 P.2d 1260 (Colo.App.1987).

■ A trial court has broad discretion in determining the relevancy of proffered evidence, and a reviewing court will not disturb its ruling absent an abuse of that discretion. *Boettcher & Co. v. Munson*, 854 P.2d 199 (Colo.1993).

■ Here, we agree with the trial court that whether the Frosts were negligent in causing the fire has no bearing on whether the defendants were negligent in not procuring an assignment of the homeowners' insurance policies. Thus, we perceive no abuse of discretion in limiting the purpose for which this evidence could be considered by the jury.

Those portions of the judgment allowing the collateral source setoff and denying an award of costs are reversed, and the cause is remanded for further proceedings consistent with the views expressed herein. The portion of the judgment denying defendants' claims for contribution and the trial court's ruling limiting the use of evidence are affirmed.

RULAND and CASEBOLT, JJ., concur.