Richard B. TUCKER, Plaintiff–Appellant,

v.

VOLUNTEERS OF AMERICA COLORADO BRANCH, a Colorado nonprofit corporation, d/b/a Volunteers of America; and Volunteers of America Foundation–Colorado, a Colorado nonprofit corporation, d/b/a Volunteers of America, Defendants–Appellees.

No. 07CA0844.

Colorado Court of Appeals,
Div. VII.

Nov. 26, 2008.

Certiorari Denied July 20, 2009.

Darling, Bergstrom & Milligan, PC, Richard J. Lesch, Ryan D. Nelson, Denver, Colorado, for Plaintiff–Appellant.

Hall & Evans, L.L.C., Peter Moyson, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge GRAHAM.

In this premises liability action, plaintiff, Richard B. Tucker, who prevailed in a jury trial, appeals the amount of the judgment in his favor. First, he asserts error in the trial court's refusal to strike the affirmative defenses of comparative negligence and assumption of the risk pleaded by defendants, Volunteers of America Colorado Branch and Volunteers of America Foundation–Colorado. Second, he asserts that the trial court erred in reducing the judgment under the collateral source rule. We affirm in part, reverse in part, and remand with directions.

In 2004, plaintiff was injured at a fundraising event sponsored by defendants. Plaintiff then commenced this action under Colorado's Premises Liability Act (PLA), section 13–21–115, C.R.S.2008, alleging that defendants failed to exercise their duty of reasonable care owed to him as an invitee. In their answer to the complaint, defendants asserted the affirmative defenses of comparative negligence, section 13–21–111, C.R.S.2008, and assumption of the risk, section 13–21–111.7, C.R.S.2008, and also sought reduction of any award to plaintiff under the collateral source rule, section 13–21–111.6, C.R.S.2008.

Before trial, plaintiff moved to strike the affirmative defenses of comparative negli-

gence and assumption of the risk on the ground that they had been abrogated by the PLA. In support of his motion, plaintiff relied upon *Vigil v. Franklin,* 103 P.3d 322 (Colo. 2004), which held that the PLA abrogated the common law defenses to duties owed by landowners.

The trial court denied the motion and defendants presented their defenses to the jury. The jury returned a verdict in plaintiff's favor, awarding $60,000 for his non-economic damages and $81,385.33 for his economic losses. Because the jury also concluded that plaintiff was forty-nine percent at fault for his injuries, the trial court reduced plaintiff's award accordingly.

The trial court, applying section 13–21–111.6, further reduced plaintiff's award by the difference between the nonscheduled, or full, amount of plaintiff's medical bills, and the scheduled, or reduced, amount of the bills actually paid by plaintiff's health insurer. In other words, the court treated the disallowed portions of the medical bills as outside the scope of the collateral source contract exception and therefore subject to setoff against plaintiff's damages.

I.

■ On appeal, plaintiff first argues that the trial court erred in refusing to strike defendants' affirmative defenses of comparative negligence and assumption of the risk. Relying on *Vigil,* plaintiff argues that language added to the Act in 2006 makes clear that the defenses were not available prior to the statutory amendment. We disagree.

We review this issue de novo. *People v. Renander,* 151 P.3d 657, 659 (Colo.App.2006).

In 2006, the General Assembly amended the PLA by adding the following sentence: "Sections 13–21–111 [comparative negligence], 13–21–111.5 [pro rata liability of defendants or nonparties at fault], and 13–21–111.7 [assumption of the risk] shall apply to an action to which this section applies." § 13–21–115(2), C.R.S.2008. By its express terms, the amendment applies to all causes of action accruing "on or after the effective date of this act." Ch. 107, sec. 2, 2006 Colo. Sess. Laws 344. The effective date of the act was April 5, 2006. This cause of action accrued prior to that date.

■ When the General Assembly amends a statute, it is presumed, unless rebutted, that the General Assembly intends to change the statute and not merely to clarify an ambiguity in it. *City of Colorado Springs v. Powell,* 156 P.3d 461, 465 (Colo.2007).

Prior to the amendment, the PLA had been silent with respect to the applicability of these affirmative defenses to actions pursued under it. Nonetheless, in *Martin v. Union Pacific R.R. Co.,* 186 P.3d 61 (Colo.App.2007) (*cert. granted* June 30, 2008), a division of this court concluded that prior to the amendment, only defenses to duties could be raised by a landowner who was sued under the PLA, which defenses were to be distinguished from affirmative defenses, such as comparative fault. *Id.* at 64–65; *cf. Vigil,* 103 P.3d at 324 n. 2.

The division in *Martin* also ruled that the 2006 amendment to the PLA constituted a change in the law as opposed to a clarification of the law, and because Martin's claim accrued prior to the effective date of the amendment, the division found it "must conclude that defendants were foreclosed from asserting these defenses." *Martin,* 186 P.3d at 66. According to *Martin,* the affirmative defenses of comparative negligence and assumption of the risk therefore were not available in premises liability cases arising prior to their express inclusion by the General Assembly. *Id.*

Later, a second division of this court analyzed *Vigil* and concluded that its "narrow holding did not address the effect of statutory defenses or defenses unrelated to duties of the landowner, such as the defense of comparative negligence." *DeWitt v. Tara Woods Ltd. P'ship,* 214 P.3d 466, 468, 2008 WL 4592122 (Colo.App. No. 06CA2006, Oct. 16, 2008). The *DeWitt* division also concluded that the PLA and the statutorily prescribed defense of comparative negligence were parts of a comprehensive treatment of damages adopted by the General Assembly in article 21 of title 13. Reading the statutory scheme as a whole and giving harmonious effect to its various parts, the division in *DeWitt* rea-

soned that statutory defenses to liability, such as comparative negligence, were not abrogated by the PLA and, consequently, the 2006 amendment merely clarified prior law.

In contrast, the division in *Martin* reasoned that the PLA was ambiguous, and on this basis concluded that the 2006 amendment was a change based upon what the General Assembly had previously and incorrectly determined to be the holding in *Vigil*. In doing so, it appears that the *Martin* division interpreted the 2006 amendment as creating the very problem it was designed to correct, that is, as establishing that common law defenses had been abrogated by the PLA before the 2006 amendment.

We consider the analysis in *DeWitt* to be persuasive because the division's reading of *Vigil* comports with our own. Based upon *Vigil*, we interpret the PLA as the General Assembly's unambiguous creation of a comprehensive act which specifies the exclusive duties of landowners to those injured on their property. The PLA, in our view, does not exclusively limit defenses and does not abrogate statutorily created defenses, which were available to landowners before the 2006 amendment and afterward. Thus, we conclude that the trial court correctly allowed defendants' affirmative defenses of comparative negligence and assumption of the risk. The jury properly considered plaintiff's comparative fault for his injuries, and the jury's award of damages to plaintiff was properly reduced by the percentage of fault attributable to him.

## II.

Plaintiff also contends, and we agree, that the trial court erred when it reduced his damages award under the collateral source rule set forth in section 13–21–111.6.

■ The trial court subtracted from plaintiff's damages award the amounts charged by the health care providers that the insurance carrier had disallowed and deducted from the bills. In effect, the trial court concluded those portions of the bills were collateral source payments because the disallowed charges were not actually paid on behalf of plaintiff. Therefore, those charges were set off against plaintiff's damages award. Our interpretation of the statute convinces us that the disallowed amounts come within the contract exception to the collateral source rule and should not have been set off.

■ When interpreting a statute, we seek to give effect to the intent of the General Assembly. We look first to the plain language of the statute before invoking interpretive canons of statutory construction. *People v. Banks*, 9 P.3d 1125, 1127 (Colo. 2000). Reading the statute as a whole, we strive to give consistent and harmonious effect to all of its parts. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.*, 109 P.3d 585, 593 (Colo. 2005). We avoid statutory interpretations leading to absurd or illogical results. *Frazier v. People*, 90 P.3d 807, 811 (Colo.2004).

### A.

The statute in question provides as follows:

In any action by any person or his legal representative to recover damages for a tort resulting in death or injury to person or property, the court, after the finder of fact has returned its verdict stating the amount of damages to be awarded, shall reduce the amount of the verdict by the amount by which such person, his estate, or his personal representative has been or will be wholly or partially indemnified or compensated for his loss by any other person, corporation, insurance company, or fund in relation to the injury, damage, or death sustained; except that the verdict shall not be reduced by the amount by which such person, his estate, or his personal representative has been or will be wholly or partially indemnified or compensated by a benefit paid as a result of a contract entered into and paid for by or on behalf of such person. The court shall enter judgment on such reduced amount.

§ 13–21–111.6.

The second clause of the statute is referred to as the contract exception. *Colo. Permanente Med. Group, P.C. v. Evans*, 926 P.2d 1218, 1230 (Colo.1996).

The contract exception to the collateral source rule is "broad enough to cover contracts for which a plaintiff gives some form of consideration, whether it be in the form of money or employment services, with the expectation of receiving future benefits in the event they become payable under the contract." *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1079 (Colo.1992) (holding that employment contract fell within the contract exception and that employee's damages award therefore could not be set off by the disability benefits he received through his employer). It is not necessary for a plaintiff to have directly made payments or provided consideration for the contract in order to have benefited from it within the meaning of the statute. *Frost v. Schroeder & Co.*, 876 P.2d 126, 128 (Colo.App.1994) (plaintiffs' indirect payment of insurance premiums to seller of property who continued to make direct mortgage and property insurance payments benefited plaintiffs and thus fell within the contract exception).

Plaintiff contends first that a contract entered into between his insurer and his health care provider is a contract entered into on his behalf, and that it therefore falls within the statute's contract exception. Consequently, he argues, his damages award should not have been reduced by the disallowed portions of the medical bills. We agree.

The General Assembly codified the collateral source rule in 1986, but modified the common law rule "to limit the circumstances under which a plaintiff may receive double compensation for an injury." *Colo. Permanente*, 926 P.2d at 1230; *see also Van Waters*, 840 P.2d at 1077 ("section 13–21–111.6 was designed as an additional restriction on recoveries"). A division of this court has recognized that

> section 13–21–111.6 ... requires the trial court to set off any payment received by a tort plaintiff, or his or her estate or personal representative, which was intended to indemnify or compensate such plaintiff "for his loss." However, it exempts from such setoff any *payment made* "as a result of a contract entered into and paid for by or on behalf of such person."

*Combined Commc'ns Corp. v. Pub. Serv. Co.*, 865 P.2d 893, 901–02 (Colo.App.1993) (emphasis added).

We are thus called upon to determine whether the amount for health care services charged but disallowed by the insurance carrier is a benefit which is paid to an injured plaintiff who receives those services and should qualify under the contract exception to the collateral source rule.

This question appears to have evaded previous review by any appellate court in this state, but several other jurisdictions have examined this question, falling on both sides of the analysis. Some courts have concluded that offsetting a damages award by the amount a medical bill was reduced pursuant to an agreement between the insurer and the health care provider is contrary to the goals of the collateral source rule. *See Acuar v. Letourneau*, 260 Va. 180, 531 S.E.2d 316 (2000) (holding that the amount by which a medical bill is written off is a benefit to the insured for which the insured paid consideration through the health insurance premium and should thus be considered a collateral source and therefore not applied as a credit against the quantum of damages the tortfeasor owes); *Hardi v. Mezzanotte*, 818 A.2d 974 (D.C.2003) (amounts written off are as much a benefit for which injured party paid consideration as are actual cash payments to the doctors and therefore should be considered a collateral source which is not subject to setoff).

As defendants point out, however, other jurisdictions have concluded that a plaintiff is not entitled to a damages award for the cost of medical expenses in excess of that actually paid by an insurer. *See Moorhead v. Crozer Chester Med. Ctr.*, 564 Pa. 156, 765 A.2d 786, 790 (2001), *abrogated on other grounds by Northbrook Life Ins. Co. v. Commonwealth*, 949 A.2d 333 (Pa.2008). The Pennsylvania Supreme Court concluded that the collateral source rule does not apply to the "illusory charge" in excess of the amount actually paid by the plaintiff's insurer. *Id.* at 791. The court noted that the amounts written off by the insurance company were sums neither paid directly by the plaintiff nor paid on the

plaintiff's behalf. Therefore, such sums did not qualify as a collateral source.

Similarly, in *Robinson v. Bates,* 112 Ohio St.3d 17, 857 N.E.2d 1195 (2006), the court held that medical expenses "written off" pursuant to insurer-health care provider contracts did not qualify as a collateral source. *Id.* at 1200 (because collateral source rule "excludes only 'evidence of benefits *paid* by a collateral source,'" it does not apply to "written-off" sums which were never paid by an insurer (quoting *Wentling v. Med. Anesthesia Servs., P.A.,* 237 Kan. 503, 701 P.2d 939 (1985))). However, *Robinson's* analysis is based on Ohio's former collateral source statute, which contained specific language disallowing unpaid benefits.

We are persuaded by the reasoning expressed in *Acuar* and *Hardi* and follow it here. We are also persuaded by the argument that, on balance, a tortfeasor ought not profit from a benefit made possible through the payment of the injured party's insurance premium.

We are not persuaded by defendants' argument that the amount which the health care provider accepted as payment in full for its services from the insurer benefited the parties to the contract but not plaintiff because, from plaintiff's perspective, the amount actually paid was irrelevant so long as plaintiff was not responsible for the excess. The contract exception to section 13–21–111.6 states that amounts for which a plaintiff has been "wholly or partially indemnified or compensated" as a result of a contract do not qualify as a collateral source and are therefore not subject to setoff. Indemnification is a broader term incorporating any compensation made for loss or damage sustained. *Black's Law Dictionary* 783 (8th ed.2004). Because the General Assembly included in the contract exception amounts for which a plaintiff is either indemnified or compensated, we conclude that the contract exception is broad enough to include the amounts disallowed pursuant to the agreement between plaintiff's insurer and his health care providers. These disallowed amounts clearly reduce the insured's exposure to liability for medical bills. We are not

persuaded that the statute was intended to pass this benefit along to the tortfeasor.

Thus, we conclude that the contract between plaintiff's insurer and the health care providers which decreased the amount actually paid for plaintiff's medical care inured to plaintiff's benefit and falls within the contract exception to section 13–21–111.6.

Moreover, if defendants were permitted to reduce the damages award by the amount the insurer saved under its reduction agreement with the health care providers, plaintiff would receive no benefit for having the foresight to purchase insurance. *See Van Waters,* 840 P.2d at 1081 (Rovira, J., specially concurring). Under defendants' proposal, a plaintiff who lacked the foresight to secure adequate insurance would then be entitled to a greater damages award than a plaintiff who had obtained insurance coverage because the uninsured or underinsured individual would not be the beneficiary of reduced medical bills. Such a paradox would, in our view, frustrate the General Assembly's goal in enacting section 13–21–111.6 of ensuring each defendant pays his or her full share of a plaintiff's damages and losses. *Colo. Permanente,* 926 P.2d at 1232.

We therefore conclude that the trial court erred by reducing plaintiff's damages award by the amount in excess of the medical bills actually paid on plaintiff's behalf. The contract exception to section 13–21–111.6 applies in this case.

## B.

Because we conclude that the contract exception to section 13–21–111.6 applies to the disallowed charges, and that plaintiff's damages award should not have been reduced under the statute, we need not address plaintiff's alternative argument that the trial court erred in calculating the amount of the setoff sought by defendants.

That portion of the judgment which reduced the damages award by the amount of the contractually disallowed charges is reversed, and the case is remanded to recalculate the award as provided in this opinion.

The judgment is affirmed in all other respects.

Judge FURMAN and Judge PLANK * concur.