24CA1803 Springsteen v Denver Cnty Assessor 11-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1803
City and County of Denver District Court No. 23CV33609
Honorable David H. Goldberg, Judge

---

Robert C. Springsteen and Mary Elisa Springsteen,

Plaintiffs-Appellants,

v.

Denver County Assessor Keith Erffmeyer, and City and County of Denver Board of Equalization,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Pawar and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

---

Springsteen Law Firm LLC, Anita M. Springsteen, Denver, Colorado, for Plaintiffs-Appellants

Miko Brown, City Attorney, Michele A. Horn, Assistant City Attorney, Charles T. Solomon, Assistant City Attorney, Denver, Colorado, for Defendants-Appellees

¶ 1 Plaintiffs, Robert Springsteen and Mary Springsteen, appeal the district court's order granting summary judgment in favor of defendants, the Denver County Assessor, Keith Erffmeyer, and the City and County of Denver Board of Equalization. We affirm.

## I. Background

¶ 2 This case concerns a 2023 tax valuation of a residential fourplex located in Denver, Colorado, conducted by the City and County of Denver Assessor's Office (Assessor's Office). The undisputed facts show that in May 2023, the Springsteens received a "Notice of Valuation" for their property from the Assessor's Office that assigned their residential property an actual value of $1,636,400 for the 2023 tax year (valuation 1). The Assessor Office's computer-generated valuation attributed $1,007,500 to the land and $628,900 to improvements made to the land.

¶ 3 The Springsteens filed a written objection with the Assessor's Office challenging the value assigned to their property. They contended that the actual value of their property was $374,500, based their valuation on the average land values of the comparables provided by the Assessor's Office, plus a de minimus improvement value.

1

¶ 4    After receiving the Springsteens' objection, the Assessor's Office reviewed the Notice of Valuation and determined that, while the land value was appropriate, the improvements to the land were overvalued because it had previously determined that the improvements had outlived their functional lifespan. The Assessor's Office reduced the valuation and assigned the improvements a de minimis value of $1,000, resulting in a total actual value of $1,008,500 (valuation 2).

¶ 5    The Springsteens disagreed with valuation 2 and appealed the valuation to the Denver County Board of Equalization (Board). The Board held a hearing to determine whether the Assessor's Office erred in its valuation. In preparation for the hearing, Erffmeyer reviewed the sales of comparable properties within the Springsteens' neighborhood and determined that their second valuation of $1,008,500 was appropriate. At the October 2023 Board hearing, both parties presented their valuations. The hearing officer determined that the Assessor's Office was correct in its valuation and denied the Springsteens' petition.

¶ 6    The Springsteens then filed a "Petition to Appeal Property Valuation Assessment Pursuant to Section 39-8-108, C.R.S." 2025,

in the district court. The Springsteens alleged, among other things, that the Assessor's Office's valuation was too high and should be reduced due to the property's unusual conditions, as allowed under section 39-1-104, C.R.S. 2025. Specifically, they cited new regulations, new zoning, and city policy changes within the past five years that negatively affected the property's value.

¶ 7 After the Springsteens filed their petition in district court, the Assessor's Office assigned a certified general appraiser from its office to conduct an independent site-specific appraisal of the property. Following Colorado law, the appraiser employed the market approach to appraise the Springsteens' property, using comparable properties with similar zoning to the Springsteens' property and located within one mile of the property. The appraiser determined that the actual value of the property for the 2023 tax year was $1,180,000 (valuation 3).

¶ 8 In February 2024, defendants filed a motion to partially dismiss the petition, arguing that the unusual conditions statute applied only biennially and was inapplicable to the Springsteens' alleged unusual conditions. After receiving the Springsteens' response, the district court granted the motion, agreeing that the

unusual conditions statute did not apply for the 2023 property tax year. *See* § 39-1-104(11)(b)(I).

¶ 9 Defendants then filed a motion for summary judgment on the only remaining claim — the property's assessed value. The Springsteens filed a response to the motion that focused on their due process right to a de novo trial and challenged the independence and credibility of the Assessor's Office's certified appraiser. They also argued that defendants' varying valuations submitted during different stages of the proceedings were unsupported by the record, done in bad faith, and contrary to public policy allowing the elderly to age in place. The Springsteens did not attach any supporting documents in their response, instead relying on the handwritten valuation Mr. Springsteen provided in defendants' Exhibit 4 to the motion for summary judgment.

¶ 10 The district court found no genuine issue of material fact, reasoning that the Springsteens offered no additional evidence challenging the certified assessor's independence or the validity of the property valuations. The court also reasoned that "[m]erely disagreeing with [defendants' valuation] d[id] not create a material

issue of fact." Consequently, the court found no genuine issue of material fact and granted summary judgment.

## II. Summary Judgment

¶ 11 The Springsteens contend the district court erroneously granted summary judgment despite the existence of a genuine issue of material fact. Specifically, they argue that section 39-8-108(1) guarantees them a de novo trial, and the court's order denied them their due process right to such a trial. They further argue that the record contains three separate valuations, creating a genuine issue of material fact concerning which value the statutory presumption should apply to. We address and reject each contention.

### A. Standard of Review and Applicable Law

¶ 12 We review de novo a district court's grant of summary judgment. *Westin Operator, LLC v. Groh*, 2015 CO 25, ¶ 19. Summary judgment is appropriate when the pleadings and supporting documents demonstrate there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c); *see Nat. Energy Res. Co. v. Upper Gunnison River Water Conservancy Dist.*, 142 P.3d 1265, 1276 (Colo. 2006). A material fact is one that affects the

outcome of the case.  *Han Ye Lee v. Colo. Times, Inc.*, 222 P.3d 957, 960 (Colo. App. 2009).  "In determining the existence of an issue of material fact, a court must view the evidence in the light most favorable to the nonmoving party."  *Id.*

¶ 13    "The moving party bears the initial burden of showing no genuine issue of material fact exists; the burden then shifts to the nonmoving party to establish a triable issue of fact."  *Groh,* ¶ 20.  A party against whom summary judgment is sought is entitled to the benefit of all favorable inferences that may be drawn from the facts. *Kaiser Found. Health Plan of Colo. v. Sharp*, 741 P.2d 714, 718 (Colo. 1987).

¶ 14    While a nonmoving party is not required to file responsive affidavits or evidence, *see* C.R.C.P. 56(e), their decision not to do so does not relieve the moving party of its burden to establish that summary judgment is appropriate.  *Ellerman v. Kite*, 625 P.2d 1006, 1010 (Colo. 1981).  However, as relevant here, C.R.C.P. 56(e) requires that all papers supporting or opposing summary judgment must be "[s]worn or certified."  Therefore, "[a] district court must disregard documents referred to in a motion for summary judgment that are not sworn or certified."  *Cody Park Prop. Owners' Ass'n v.*

*Harder*, 251 P.3d 1, 4 (Colo. App. 2009).  This includes expert reports.  *See McDaniels v. Laub,* 186 P.3d 86, 87 (Colo. App. 2008) ("Unsworn expert witness reports are not admissible to support or oppose a motion for summary judgment.").  Summary judgment is a "drastic" remedy and may be granted only when there is a "clear showing that the controlling standards have been met."  *Groh,* ¶ 21 (citation omitted).

¶ 15    All taxable real property located in Colorado must be "listed, appraised, and valued for assessment."  § 39-1-105, C.R.S. 2025; *see* Colo. Const. art. X, § 3(1)(a).  Taxable real property includes all property that is not expressly exempted by law from taxation.  § 39-1-102(16), C.R.S. 2025.  The county assessor is charged with conducting this assessment.  § 39-1-103(5)(a), C.R.S. 2025; *see* Colo. Const. art. X, § 3(1)(a); *Gilpin Cnty. Bd. of Equalization v. Russell,* 941 P.2d 257, 261 (Colo. 1997).  The assessor uses the taxation scheme outlined in title 39 of the Colorado Revised Statutes, in addition to the appraisal procedures and instructions published in the Assessors' Reference Library, to ensure the fair and uniform taxation of all taxable real property in Colorado.  *See El Paso Cnty. Bd. of Equalization v. Craddock,* 850 P.2d 702, 704

(Colo. 1993); Colo. Const. art. X, § 3(1)(a); § 39-1-101.5, C.R.S. 2025. *See generally* 3 Div. of Prop. Tax'n, Dep't of Loc. Affs., *Assessors' Reference Library* (rev. Dec. 2024). The assessment occurs in two phases: (1) valuation and (2) classification. In the valuation phase, the assessor calculates the actual value of the property. *See* § 39-1-103(5)(a). This calculation is guided by three theories of appraisal — the cost, market, and income approaches — that are designed to estimate the actual value of the property. *Id.*; *Xerox Corp. v. Bd. of Cnty. Comm'rs*, 87 P.3d 189, 191 (Colo. App. 2003) (market value is synonymous with actual value). In the classification phase, "[t]he actual value of residential real-property shall be determined solely by consideration of the market approach to appraisal." § 39–1–103(5)(a). The market approach (also known as the sales comparison approach) involves an analysis of sales of comparable properties in the market. *Bd. of Assessment Appeals v. E.E. Sonnenberg & Sons, Inc.*, 797 P.2d 27, 30 nn.8-9, 31 n.12 (Colo. 1990).

## B. No Due Process Violation

¶ 16 We begin with the Springsteens' due process argument that permitting courts to enter summary judgment orders without

holding a de novo trial renders section 39-8-108(1) meaningless, because if they are correct, we must remand for a de novo trial. *See* § 39-8-108(1).

### 1. Standard of Review and Applicable Law

¶ 17 The district court's determination regarding the scope of the trial authorized by section 39-8-108(1), involves a question of statutory interpretation that we review de novo. *Jefferson Cnty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010); *see also Cisneros v. Elder*, 2022 CO 13M, ¶ 21.

¶ 18 "In construing a statute, we aim to effectuate the legislature's intent." *Elder*, ¶ 21. We therefore "consider the entire statutory scheme to give consistent, harmonious, and sensible effect to all of its parts, and we construe words and phrases in accordance with their plain and ordinary meanings." *Id.* (quoting *Ryser v. Shelter Mut. Ins. Co.*, 2021 CO 11, ¶ 14). And we avoid statutory interpretations that lead to an absurd or illogical result. *Tucker v. Volunteers of Am. Colo. Branch*, 211 P.3d 708, 711 (Colo. App. 2008), *aff'd sub nom.*, *Volunteers of Am. Colo. Branch v. Gardenswartz*, 242 P.3d 1080 (Colo. 2010).

¶ 19    Article X, section 3, of the Colorado Constitution establishes a framework for the uniform taxation of real and personal property. *Douglas County Bd. of Equalization v. Fid. Castle Pines, Ltd.*, 890 P.2d 119, 122 (Colo. 1995). The determination of the actual value of property is the essential component of that framework. *Id.*; *see Craddock*, 850 P.2d at 704.

¶ 20    Section 39-8-108(1) permits a taxpayer to "appeal the valuation set by the assessor," or the "adjusted valuation" if the county board of equalization makes an adjustment. The statute provides the taxpayer three options to appeal a valuation: (1) appeal to the board of assessment appeals; (2) appeal to the district court for a "trial de novo"; or (3) submit the case to arbitration under section 39-8-108.5, C.R.S. 2025.

¶ 21    In a trial de novo under section 39-8-108(1), the taxpayer bears the burden of proving by a preponderance of the evidence that the assessor's valuation is incorrect. *Arapahoe Cnty. Bd. of Equalization v. Podoll*, 935 P.2d 14, 18 (Colo. 1997). "A trial de novo is commonly understood as a trial anew of the entire controversy, including the hearing of evidence as though no previous action had been taken." *Turner v. Rossmiller,* 532 P.2d 751, 754 (Colo. App.

1975); *see also* Black's Law Dictionary 548 (12th ed. 2024) (defining "de novo" as "[a]new"). This is consistent with the meaning of "trial de novo" in section 39-8-108(1) as interpreted by a division of this court in *Arapahoe Partnership v. Board of County Commissioners*, 813 P.2d 766, 768 (Colo. App. 1990). There, the division explained that the district court trial "lose[s] its character as a review" of a lower proceeding and instead becomes "an original proceeding, with the reviewing court making an entirely independent determination." *Id.*

## 2.     Analysis

¶ 22     We discern no error in the court's consideration of defendants' motion for summary judgment. Although the appeal statute allows for a trial de novo in the district court, nothing in its plain language requires that a trial occur in every case. *See* § 39-8-108(1). The General Assembly was aware of C.R.C.P. 56 when it enacted the statute and could have expressly barred summary judgment in tax assessment appeals. *See People in Interest of O.C.*, 2012 COA 161, ¶ 27 ("The General Assembly is presumed to be aware of existing law when it enacts legislation." (citing *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004)), *aff'd*, 2013 CO 56. The fact that it did not is

evidence of its intent to treat this civil trial like all other civil cases and to apply the rules of civil procedure, which provide for the resolution of cases by summary judgment.  *See Gates Rubber Co. v. State Bd. of Equalization*, 770 P.2d 1189, 1195 (Colo. 1989) ("[B]ecause the 1902 General Assembly created distinct procedures for appealing tax assessment errors, 'it could not have been the intent of the Legislature to provide two methods of procedure for the same wrong, growing out of the same facts'" (citation omitted)).  The Springsteens provided no authority, nor are we aware of any, that precludes summary judgment in a section 39-8-108(1) appeal. Accordingly, we reject their argument.

### 3.  No Issue of Material Fact

¶ 23    Next, we determine whether any genuine issue of material fact exists.  Upon our de novo review of the record, we note that only one document attached to the motion for summary judgment satisfies the "sworn or certified" requirement of C.R.C.P. 56 — the sworn declaration of Joshua Bushner, a licensed real property appraiser and the Commercial Assessment Manager for the Department of Finance in the Assessor's Office.  The declaration sets forth the facts and procedural posture of the case and endorses

12

valuation 2.  The other exhibits attached to the summary judgment motion included the varying comparables used in valuations 1 and 2, the Springsteens' land value calculation, and the certified appraiser's report endorsing valuation 3 (highest and best use). But none of these documents are sworn or certified and, as a result, cannot be considered in determining whether a genuine issue of material fact exists.  *See Harder*, 251 P.3d at 4.

¶ 24     The Springsteens agree that they did not submit any documents with their response to summary judgment and confirmed at oral argument that they relied on defendants' attachments to the summary judgment motion, including the different comparables and valuations, to support the existence of a material issue of fact.  A nonmoving party who provides no affidavits or other attachments does so at their peril.  *See Ellerman*, 625 P.2d at 1010; *Jules v. Embassy Props., Inc.*, 905 P.2d 13, 15 (Colo. App. 1995) ("Although it may be risky for a party not to respond, the absence of a response does not affect the burden of the party moving for summary judgment to demonstrate that it is entitled to judgment as a matter of law.").  Here, because C.R.C.P. 56(e) precludes us from considering the unsworn comparables and

13

valuations, we conclude that the only evidence properly before us for consideration is the sworn declaration. That declaration endorses valuation 2 as the correct valuation of the property, and therefore, it is the valuation that is presumed to be correct for taxation purposes. *See Podoll*, 935 P.2d at 18. Absent any other sworn or certified document in the record endorsing a different valuation, we must affirm the court's order granting defendants summary judgment.

## III. Disposition

¶ 25 The judgment is affirmed.

JUDGE PAWAR and JUDGE YUN concur.