**Susan D. MILLER, Plaintiff–Appellant,**

**v.**

**Carol L. BRANNON, Defendant–Appellee.**

**No. 08CA0581.**

Colorado Court of Appeals,
Div. VI.

March 5, 2009.

Law Office of Chris D. Hefty, Chris D. Hefty, Loveland, Colorado, for Plaintiff–Appellant.

The Ukasick Law Firm, LLC, Troy A. Ukasick, Loveland, Colorado, for Defendant–Appellee.

Opinion by Judge J. JONES.

In this negligence action involving an automobile accident, plaintiff, Susan D. Miller, appeals the district court's judgment entered on a jury verdict finding that defendant, Carol L. Brannon, was negligent and thereby caused Ms. Miller injuries, damages, or losses, but awarding Ms. Miller no damages. Specifically, Ms. Miller challenges certain of the district court's orders and jury instructions, which Ms. Miller contends improperly denied her the ability to collect damages for past and future medical expenses and lost earnings.

We conclude that the district court did not err in prohibiting Ms. Miller from presenting evidence of past medical expenses or in denying her request for a continuance of the trial to seek additional medical treatment and the recovery of damages therefor. However, we also conclude that the district court erred by applying the repealed Colorado Auto Accident Reparations Act (No–Fault Act) (formerly codified, as amended, at §§ 10–4–701 to –725; repealed effective July 1, 2003, ch. 189, sec. 1, § 10–4–726, 2002 Colo. Sess. Laws 649), by instructing the jury to subtract from Ms. Miller's claimed damages for lost earnings fifty-two weeks of wage-loss reimbursements she received under the personal injury protection (PIP) benefits of her automobile insurance policy. Therefore, we reverse the judgment in part and remand the case for a new trial on Ms. Miller's claim for lost earnings. In all other respects, we affirm.

## I. Background

On July 7, 2003, six days after the effective date of the repeal of the No–Fault Act, Ms. Brannon was driving her car in Loveland when she failed to stop at a red light. She rear-ended Ms. Miller's vehicle, and Ms. Miller suffered neck injuries as a result.

At the time of the accident, Ms. Miller was the named insured on an insurance policy that ran from March 21, 2003, through September 21, 2003. Ms. Miller's insurer renewed the policy prior to the repeal of the No–Fault Act. As required by the No–Fault Act, see § 10–4–706(1)(d)(I) (repealed), Ms. Miller's policy provided a basic level of PIP benefits that included, as applicable here, fifty-two weeks of wage-loss reimbursements and payment for medical expenses up to $50,000. As particularly relevant here, the No–Fault Act also provided that when losses resulting from an automobile accident were eligible for PIP coverage under an insurance policy, such losses were not recoverable in a tort action against the tortfeasor who caused the losses. See § 10–4–713(1) (repealed).

Almost three years after the accident, Ms. Miller sued Ms. Brannon, asserting claims for negligence and negligence per se. The trial was eventually set to begin on January 29, 2008.

On January 9, 2008, the parties filed a joint Trial Management Order. Therein, Ms. Miller did not show past medical expenses as a category of damages she intended to attempt to recover at trial. Ms. Miller did show future medical expenses as a category of damages, but at a hearing the same day, her counsel stated that she would not seek such damages unless (1) her new doctor "confirmed" the need for future medical treatment, and (2) the court granted a continuance of the trial to permit her to receive additional medical treatment and to permit the doctor, whom she had not previously identified as a potential witness, to testify.

One week before trial, Ms. Miller filed a motion to continue the trial to allow the parties to conduct discovery "regarding [Ms. Miller's] current medical condition and the need for surgery to correct the condition," and to permit her to present evidence of such treatment at trial. Ms. Brannon opposed the motion.

The court denied the motion for a continuance. The court concluded that Ms. Miller had not explained sufficiently the need for seeking additional medical treatment so shortly before trial, particularly since it did not appear the additional treatment was

needed because of any sudden or unexpected change in her condition, and therefore she had not established good cause for a continuance.

At 4:43 p.m. on the Saturday before the trial (scheduled to begin on Tuesday), Ms. Miller filed a motion objecting to the application of the No–Fault Act to her damages claims and objecting to certain jury instructions, to which she had previously stipulated, addressing the No–Fault Act's requirement of proving damages in excess of a threshold amount. *See* § 10–4–714 (repealed). The court took up the motion the morning of the first day of trial. The court ruled that the threshold requirement did not apply because the accident occurred after the effective date of the repeal of the No–Fault Act. However, the court ruled that Ms. Miller would not be permitted to recover damages covered by the PIP benefits, including lost earnings and past medical expenses, effectively applying repealed section 10–4–713(1) of the No–Fault Act to her claims.

The court also denied Ms. Miller's motion to call a witness to testify as to her past medical expenses because her late endorsement of the new witness was untimely and inexcusable. The court ruled that because Ms. Miller had not identified past medical expenses in the Trial Management Order, and Ms. Brannon was not otherwise on notice that she would be seeking such damages, she would not be allowed to introduce evidence of such damages at trial.

Ms. Brannon admitted liability for the accident, and the only issues at trial were the cause and extent of Ms. Miller's claimed injuries and damages. Over Ms. Miller's objection, and consistent with its earlier decision to apply repealed section 10–4–713(1), the court instructed the jury that in awarding damages it must exclude amounts Ms. Miller would have earned in the first fifty-two weeks after the accident had she not been injured in the accident. As noted, the jury did not award any damages to Ms. Miller.

## II. Discussion

### A. Disallowance of Evidence of Past Medical Expenses

Ms. Miller contends that the district court abused its discretion when it precluded her from presenting evidence of her past medical expenses. We disagree.

As noted, the district court prohibited Ms. Miller from presenting evidence of past medical expenses (which totaled approximately $4,800) for two reasons: (1) Ms. Miller's past medical expenses did not exceed the amount that she received pursuant to her PIP benefits, and repealed section 10–4–713(1) prohibited the recovery of damages for benefits the No–Fault Act required the insurer to provide; and (2) Ms. Miller did not identify damages for past medical expenses in the Trial Management Order

As discussed below, we disagree with the district court's application of repealed section 10–4–713(1) of the No–Fault Act to Ms. Miller's damages claims. However, we conclude that the district court did not err in prohibiting Ms. Miller from introducing evidence of past medical expenses because she did not identify such damages in the Trial Management Order. Therefore, we will not disturb the district court's ruling precluding the evidence. *See Wagner v. Hilkey,* 914 P.2d 460, 462 (Colo.App.1995) ("A correct judgment will not be disturbed on review, even if our analysis differs from that of the trial court."), *aff'd sub nom. Wagner v. Bd. of County Comm'rs,* 933 P.2d 1311 (Colo.1997); *La-Fond v. Basham,* 683 P.2d 367, 369–70 (Colo. App.1984) (appellate court "will not disturb the trial court's decision merely because it assigned one incorrect reason for it").

Although Ms. Miller requested damages for "medical expenses" in her complaint, her damages itemization in the Trial Management Order listed damages only for (1) lost earnings totaling $109,649; (2) pain and suffering totaling $696,420; and (3) *future* medical expenses totaling $225,000.

C.R.C.P. 16(f)(3)(V) requires the parties to a civil lawsuit to file a trial management order in which "[e]ach claiming party shall set forth a detailed description of the categories of damages or other relief sought and a computation of any economic damages claimed." The official committee comment to the rule indicates that this requirement "fa-

cilitate[s] preparation and trial of the case." C.R.C.P. 16 committee comment (c).

C.R.C.P. 16(f)(5) provides that "[t]he Trial Management Order shall control the subsequent course of the trial. Modification to or divergence from the Trial Management Order, whether prior to or during trial, shall be permitted upon a demonstration that the modification or divergence could not with reasonable diligence have been anticipated."

Here, Ms. Miller failed to demonstrate that a modification permitting her to claim damages for past medical expenses could not have been anticipated. There is no evidence in the record demonstrating that at the time the parties submitted the Trial Management Order, Ms. Miller was unaware that she had incurred past medical expenses or that they totaled $4,800. Rather, it appears that her counsel made an error in judgment by assuming that the No–Fault Act applied to her case. Therefore, the district court did not abuse its discretion in prohibiting Ms. Miller from presenting evidence of her past medical expenses. *Cf. Polk v. Denver Dist. Court,* 849 P.2d 23, 25–27 (Colo.1993) (court did not abuse its discretion in denying request to amend answer where request was untimely, amendment would have raised new issues requiring additional discovery, and a continuance of the trial would have been required).

## B. Application of the Repealed No–Fault Act

Ms. Miller contends that the district court erred in applying repealed section 10–4–713(1) of the No–Fault Act to her claim for lost earnings by instructing the jury that it must reduce her damages by amounts she could have earned in the year after the accident had she not been injured. She argues that because the No–Fault Act was repealed in its entirety prior to the date of the accident, section 10–4–713(1) could not apply to her damages claim, and her damages claim falls within the contract exception to the collateral source rule as codified in section 13–21–111.6, C.R.S.2008. We agree.

The General Assembly repealed the No–Fault Act effective July 1, 2003, six days before the accident. Ch. 189, sec. 1, § 10–4–726, 2002 Colo. Sess. Laws 649. Nonetheless, the district court determined that Ms. Miller's PIP benefits did not fall within the collateral source rule's contract exception found in section 13–21–111.6, because that exception was trumped by repealed section 10–4–713(1). Accordingly, over Ms. Miller's objection, it instructed the jury in relevant part as follows:

### INSTRUCTION NO. 18

In determining the amount of plaintiff's damages, if any, for ... economic losses ... [including loss of earnings or damages to her ability to earn money in the future] you must exclude the following amounts:

(a) the following amounts of the total income plaintiff would have earned from work performed by her, had she not been injured in the accident, during the first 52 weeks of the accident: 100% of the first $125.00 of loss of total income per week, 70% of the next $125.00 of loss of total income per week, and 60% of any remaining loss of total income per week; but not to exclude more than $400 per week of any of these losses.

The Court has instructed you to exclude these amounts because, according to the Colorado Auto Accident Reparations Act, the plaintiff has received or is entitled to receive these amounts from other sources.

### INSTRUCTION NO. 20

...

b. What is the total amount of the plaintiff's damages, if any, for economic losses or injuries, excluding any damages for physical impairment or disfigurement? Economic losses are those losses described in numbered paragraph 2 of Instruction 18. In computing the amount of the plaintiff's economic losses, you must exclude those amounts which you are instructed to exclude in Instruction 18. You should answer "0" if you determine there were none.

. . . .

■ The district court's ruling presents a question of statutory interpretation, which we review de novo. *Clyncke v. Waneka,* 157

P.3d 1072, 1076 (Colo.2007); *Shelter Mutual Ins. Co. v. Mid–Century Ins. Co.,* —— P.3d ——, ——, 2008 WL 5173326 (Colo.App. No. 07CA2063, Dec. 11, 2008); *see also Hogg v. Board of Comm'rs,* 57 Colo. 463, 469, 141 P. 478, 480 (1914) (clause of statute repealing another statute subject to ordinary rules of statutory interpretation).

### 1. Preservation of the Issue

■ We initially address and reject Ms. Brannon's contention that Ms. Miller failed to preserve the issue of section 10–4–713(1)'s applicability because her counsel stated in the motion to continue the trial that "[t]his case falls under the No Fault Act because [Ms. Miller] was currently under a contract for insurance at the time of the [accident]." Contrary to Ms. Brannon's contention, this statement did not constitute a "judicial admission" which barred Ms. Miller from later taking a contrary position.

■ "A judicial admission is a formal, deliberate declaration which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute." *Kempter v. Hurd,* 713 P.2d 1274, 1279 (Colo.1986); *accord Salazar v. American Sterilizer Co.,* 5 P.3d 357, 364 (Colo.App.2000). "Generally, any fact whatever may be the subject of a judicial admission, and parties may stipulate away valuable rights, provided the court is not required to abrogate inviolate rules of public policy." *Kempter,* 713 P.2d at 1279–80.

■ The judicial admissions doctrine, however, does not apply to propositions of law. *See People ex rel. Town of Wray v. Grant,* 48 Colo. 156, 158–59, 111 P. 69, 70 (1910); *see also Falcon v. Saint–Veltri,* 23 Fed.Appx. 908, 911 n. 3, 2001 WL 1497719 (10th Cir. 2001); *Guidry v. Sheet Metal Workers Int'l Ass'n,* 10 F.3d 700, 715–16 (10th Cir.1993), *modified on other grounds on reh'g en banc,* 39 F.3d 1078 (10th Cir.1994); *Wasserman v. Tonelli,* 343 Mass. 253, 178 N.E.2d 477, 479– 80 (1961); *Stockton v. Tester,* 273 S.W.2d 783, 786 (Mo.Ct.App.1954); *DeMars v. Carlstrom,* 285 Mont. 334, 948 P.2d 246, 249 (1997); *Fletcher v. Eagle River Memorial Hosp., Inc.,* 156 Wis.2d 165, 456 N.W.2d 788,

794 (1990); *cf. King v. United States,* 641 F.2d 253, 258 (5th Cir.1981) (court was not bound by parties' stipulation as to which party bore the burden of proof). Ms. Miller's counsel's statement unquestionably pertained to a proposition of law. Therefore, it was not a binding judicial admission.

Ms. Miller timely objected to the jury instructions at issue. We therefore conclude that she preserved this issue for review.

### 2. Effect of Repeal

As relevant here, former section 10–4–713(1) provided that an insured could not recover as damages against a legally responsible party any PIP benefits an insurer was required to offer the insured under former section 10–4–706. In repealing the No–Fault Act in its entirety "effective July 1, 2003," the General Assembly stated: "The general assembly hereby finds, determines, and declares that this act is necessary for the immediate preservation of the public peace, health, and safety." Ch. 189, sec. 2, 2002 Colo. Sess. Laws 649.

■ When a statute is repealed, it loses all force and is effectively regarded as if it had never existed. *See People v. D.K.B.,* 843 P.2d 1326, 1331 (Colo.1993) (" '[p]owers derived wholly from statute are extinguished by its repeal' " (quoting *Vail v. Denver Bldg. & Constr. Trades Council,* 108 Colo. 206, 210, 115 P.2d 389, 391 (1941) )); *Hirschburg v. People,* 6 Colo. 145, 146–47 (1881); *Modern Bhd. of America v. Lock,* 22 Colo.App. 409, 414–16, 125 P. 556, 558 (1912); *see also In re Shaver,* 140 F.2d 180, 181 (7th Cir.1944); *Gustafson v. Rajkovich,* 76 Ariz. 280, 263 P.2d 540, 543 (1953); *Wieslander v. Iowa Dep't of Transp.,* 596 N.W.2d 516, 522 (Iowa 1999); *see generally* 1A Norman R. Singer, *Statutes and Statutory Construction* § 23:7, at 453 & § 23:34, at 568–69, 571 (6th ed. 2002) *(Sutherland Statutory Construction).* The repeal of the statute without any reservation takes away all rights and remedies given by the repealed statute, regardless of when the claim to which they may have applied accrued. *Sutherland Statutory Construction* § 23:7, at 453 & § 23:34, at 571.

A straightforward application of these well-established principles leads inevitably to the conclusion that because former section 10–4–713(1) was repealed effective July 1, 2003, Ms. Brannon cannot assert any rights thereunder in this action. *See generally* Richard Laugesen, *After the Sunset—Colorado Motor Vehicle Insurance Post–July 1, 2003,* 32 Colo. Law. 111, 114 (July 2003) (stating, after noting that former section 10–4–713(1) was a "tort modification feature" of the No–Fault Act: "[F]or an accident occurring on or after July 1, 2003, with a policy ... that overlaps that date, the tort modification features would no longer apply, allowing the claimant to immediately sue in tort, while at the same time have continuing PIP benefit eligibility."). Nonetheless, she contends that she had a vested right to raise former section 10–4–713(1) in this action because Ms. Miller's insurance policy was renewed before the repeal of the No–Fault Act, and therefore denying her the ability to raise the statute would amount to an impermissible retrospective application of the repeal of the No–Fault Act. We are not persuaded.

The Colorado Constitution prohibits enactment of any law that is "retrospective in its operation...." Colo. Const. art. II, § 11. Absent an express indication of legislative intent to the contrary, there is a presumption that a statute operates prospectively, "meaning it operates on transactions occurring after its effective date." *In re Estate of DeWitt,* 54 P.3d 849, 854 (Colo.2002); *see also Modern Bhd. of America,* 22 Colo.App. at 416, 125 P. at 558–59 (repeal of a statute operates prospectively).

To determine whether a statute impermissibly operates retrospectively, we conduct a two-step inquiry. First, we determine whether the General Assembly intended that the statute operate retroactively. *DeWitt,* 54 P.3d at 854. "A statute is retroactive if it operates on transactions that have already occurred or on rights and obligations that existed before its effective date." *Id.* Retroactively applying a law, although disfavored, is not necessarily unconstitutional but may be permitted if the law effects only a procedural or remedial change, rather than a substantive change in the law. *City of Golden v. Parker,* 138 P.3d 285, 289 (Colo.2006).

Second, if we determine that the General Assembly intended the statute to operate retroactively, we determine whether the statute operates retrospectively. *Id.; DeWitt,* 54 P.3d at 854. "A statute is retrospective if it 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.'" *DeWitt,* 54 P.3d at 854 (quoting in part *Denver, S. Park & Pac. Ry. Co. v. Woodward,* 4 Colo. 162, 167 (1878)); *accord Parker,* 138 P.3d at 290.

In repealing the No–Fault Act, the General Assembly did not express any intent, much less a clear intent, to retroactively apply the No–Fault Act's repeal. Therefore, the repeal was presumptively prospective. Insofar as the repeal of section 10–4–713(1) specifically is concerned, we need not decide whether the repeal operated on transactions that had already occurred or on existing rights or obligations because even if it did, it did not operate retrospectively because it did not impair a vested right.

"[A] vested right 'must be a contract right, a property right, or a right arising from a transaction in the nature of a contract which has become perfected to the degree that it is not dependent on the continued existence of the statute' or common law." *Parker,* 138 P.3d at 293 (quoting in part *Sutherland Statutory Construction* § 23.35, at 576); *accord D.K.B.,* 843 P.2d at 1331. "[A] vested right 'must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another.'" *Ficarra v. Dep't of Regulatory Agencies,* 849 P.2d 6, 16 (Colo.1993) (quoting *People ex rel. Eitel v. Lindheimer,* 371 Ill. 367, 21 N.E.2d 318, 321 (1939)).

Though Ms. Brannon would have been entitled to have Ms. Miller's lost earnings damages reduced by her PIP benefits if the

accident had occurred prior to the repeal of section 10–4–713(1), that remedy was neither a contract right, a property right, nor a right arising from a transaction in the nature of a contract. Rather, it was a right that existed solely by virtue of the statute. *See D.K.B.*, 843 P.2d at 1331.

It is irrelevant that Ms. Miller's policy was renewed while the No–Fault Act was still in effect. This is not an action between parties to the policy involving their respective rights and obligations. The policy is silent concerning the right of a stranger to the policy to apply the No–Fault Act's collateral source rule. Again, that right derived solely from the statute.

In this regard, Ms. Brannon's reliance on Division of Insurance Reg. 5–2–11(5)(D), (F), 3 Code Colo. Regs. 702–5, and an "official" statement from the Commissioner of Insurance are misplaced. Those pronouncements merely indicate that so-called "holdover policies" (policies which predate the repeal of the No–Fault Act but which by their terms continue in force thereafter) do not automatically convert to tort policies on July 1, 2003; rather, the no-fault statutes and regulations continue to apply to such policies. These pronouncements do not apply to the application of former section 10–4–713(1), which did not involve the rights or obligations of the insurer and the insured under the policy.

In sum, we conclude that the district court erred in determining that repealed section 10–4–713(1) applied to Ms. Miller's claim for lost earnings.

### 3. Contract Exception to the Collateral Source Rule

When the General Assembly repealed former section 10–4–713(1), section 13–21–111.6, Colorado's codification of the collateral source rule, became applicable to any claim for damages for amounts covered by PIP benefits. *See Martinez v. Shapland*, 833 P.2d 837, 840–41 (Colo.App.1992) (noting that but for the applicability of former section 10–4–713(1), section 13–21–111.6 would have applied to the victim's claim for economic losses eligible for PIP coverage); *cf. White v. State*, 290 Ark. 130, 717 S.W.2d 784, 787 (1986) (the repeal of a statute abrogating a common law rule reinstates the common law rule, absent an indication the legislature intended a contrary result). Section 13–21–111.6 sets forth a general rule that damages for which a claimant has been wholly or partially indemnified or compensated by another cannot be recovered in a tort action against the tortfeasor involving the same injury. However, the statute creates an exception for amounts "paid as a result of a contract entered into and paid for by or on behalf of" the injured party. § 13–21–111.6.

■■■ Ms. Brannon argues that the division's reasoning in *Martinez*, 833 P.2d 837, dictates that Ms. Miller's PIP benefits do not fall within the contract exception to the collateral source rule, and therefore the district court did not err in instructing the jury to subtract Ms. Miller's PIP wage-loss reimbursements from any damages she sought for lost earnings. We disagree.

In *Martinez*, a division of this court addressed whether the contract exception applied to PIP benefits received by a victim pursuant to a policy subject to the No–Fault Act. *Martinez*, 833 P.2d at 841. That division concluded that it did not. In so holding, the division construed former section 10–4–713(1) and section 13–21–111.6 together so as to give effect to both. *Id.* In this case, however, former section 10–4–713(1) had been repealed at the time of the accident, and, for the reasons discussed above is of no force. *Cf. Union Pacific R. Co. v. Certain Underwriters at Lloyd's*, 37 P.3d 524, 525 (Colo.App.2001) (rejecting an argument based on case law interpreting a repealed statute of limitations). Indeed, as noted above, the *Martinez* division observed that the contract exception would have applied to the plaintiff's claim but for the applicability of section 10–4–713(1). *Martinez*, 833 P.2d at 840–41.

Ms. Brannon also argues that because Ms. Miller renewed her insurance policy before the No–Fault Act was repealed, and the No–Fault Act required Ms. Miller to purchase PIP benefits, the PIP benefits do not qualify as "a benefit paid as a result of a contract entered into and paid for by or on behalf of such person." § 13–21–111.6. Ms. Brannon

asserts that the contract exception applies only where the right to indemnification or compensation is purchased because of the insured's "own prudence or foresight." Again, we disagree.

When interpreting a statute, we look first to the plain language of the statute before invoking any interpretative canons of statutory construction. *Tucker v. Volunteers of America Colorado Branch,* —— P.3d ——, ——, 2008 WL 5006528 (Colo.App. No. 07CA0844, Nov. 26, 2008). "If the language is clear and unambiguous, we must interpret it as written." *Premier Farm Credit, PCA v. W–Cattle, LLC,* 155 P.3d 504, 513 (Colo. App.2006).

Under the plain language of the contract exception, Ms. Miller's lost earnings damages should not have been reduced by her PIP benefits because Ms. Miller received those PIP benefits as a result of entering into and paying for the policy. There is nothing in the language of the contract exception that would somehow exclude Ms. Miller's PIP benefits because the No–Fault Act required her to purchase them. We will not read into the statute such an exception. *See Scoggins v. Unigard Ins. Co.,* 869 P.2d 202, 205 (Colo. 1994) ("We will not judicially legislate by reading a statute to accomplish something the plain language does not suggest, warrant or mandate."); *Titan Indem. Co. v. School Dist. No. 1,* 129 P.3d 1075, 1077 (Colo.App. 2005) ("[W]e will not read into a statute an exception or proviso that the plain language does not suggest.").

### 4. Remedy

Because former section 10–4–713(1) was repealed before the accident, and the contract exception to the collateral source rule applied to Ms. Miller's claim for lost earnings, the district court should not have instructed the jury so as to allow it to subtract Ms. Miller's PIP benefits for fifty-two weeks of lost earnings from her damages. *Clyncke,* 157 P.3d at 1079 (jury instructions must correctly state the law); *Meier v. McCoy,* 119 P.3d 519, 524 (Colo.App.2004) (same). We must order a new trial when the result of the trial might have been different if the district court had properly instructed the

jury. *Clyncke,* 157 P.3d at 1079; *Meier,* 119 P.3d at 524.

Here, the record supports the conclusion that the jury might have awarded Ms. Miller additional damages if the district court had given a proper instruction. Ms. Miller presented evidence of her lost earnings during the first year following the accident, but the district court's instructions required the jury to subtract that amount from its assessment of Ms. Miller's damages. Therefore, we reverse the judgment as to damages, and remand the case for a new trial solely on the issue of Ms. Miller's claim for lost earnings.

### C. Future Medical Expenses

Ms. Miller contends that the district court abused its discretion in denying her motion to continue the trial to allow the parties to conduct further discovery regarding her future medical expenses, including those attributable to a possible future surgery. We disagree.

We review the district court's denial of a motion to continue for an abuse of discretion. *Burchett v. S. Denver Windustrial Co.,* 42 P.3d 19, 22 (Colo.2002); *Todd v. Bear Valley Village Apartments,* 980 P.2d 973, 976 (Colo.1999). "We will find an abuse of discretion only upon a showing that the court's ruling was manifestly arbitrary, unreasonable, or unfair." *City of Brighton v. Palizzi,* —— P.3d ——, ——, 2008 WL 4742074 (Colo.App. No. 07CA1343, Oct. 30, 2008).

A court should grant a motion to continue a trial only upon a showing of good cause. C.R.C.P. 121 § 1–11. Good cause exists when there are unforeseen and exceptional circumstances requiring a continuance. *See Todd,* 980 P.2d at 976. In considering a motion to continue, a court should be mindful of the problems associated with a delay of trial, including devaluation of a judgment, anxiety in litigants, uncertainty for lawyers, loss and deterioration of evidence, waste of court resources, increase of the costs of litigation, and confusion and conflict in the allocation of court resources. *See id.*

Here, Ms. Miller moved to continue the trial on January 22, 2008, one week before the trial was scheduled to begin. She claimed that an orthopedic specialist recommended surgery for her neck injury, and that if she had that surgery, she could claim additional damages at trial. Ms. Miller had not previously disclosed the specialist as a potential witness.

The district court denied Ms. Miller's motion to continue, finding that she had not demonstrated good cause. Specifically, the court found that Ms. Miller had consulted with her first orthopedic specialist three times, in October 2003, May 2004, and September 2006. Reviewing the first specialist's records of Ms. Miller's visits, the court found that "each time the complaint and diagnosis were similar and the treatment recommended was nonsurgical." The first specialist stated that on the last visit Ms. Miller was close to reaching maximum medical improvement.

Ms. Miller consulted with the second orthopedic specialist for the first time on December 19, 2007, only a few weeks before the trial and more than one year after she had last seen her first specialist. Though she claimed in her motion to continue that her symptoms had worsened, the court noted that Ms. Miller's motion did not say "when, or how, [the conditions] worsened." The court found that both specialists made generally the same diagnosis, and that there was nothing in the second specialist's records "to indicate a recommendation of surgery, just that it is an option," or to indicate Ms. Miller's intent "to have surgery in the foreseeable future." The court found, "This was not a situation where [Ms. Miller] had any significant or unexpected change in her condition shortly before trial. Rather, it is a situation of a persistent condition where she decided to seek another doctor's opinion about her treatment options a few weeks before trial."

Ms. Miller contends that she established good cause for a continuance because the second orthopedic specialist diagnosed her and recommended surgery for her neck that might have resulted in an additional award of damages. In support, Ms. Miller relies on *Todd*, 980 P.2d 973. We are not persuaded.

*Todd* involved two motions to continue. *Id.* at 976. The district court denied the first and granted the second. *Id.* The first motion to continue was based on the allegation that the plaintiff had recently received a preliminary diagnosis of a closed-head injury which she believed to be a result of a slip and fall accident. *Id.* The supreme court found that it was within the district court's discretion to find that the plaintiff had failed to demonstrate good cause for a continuance given the limited documentation supporting the motion. *Id.*

The second motion asserted two grounds for a continuance. *Id.* at 976. First, it provided greater detail about the plaintiff's closed-head injury. *Id.* Second, it asserted that the plaintiff's attorney, a sole practitioner, would be significantly incapacitated for several weeks following emergency back surgery. *Id.* The district court granted the motion. *Id.* The supreme court assumed that the basis for the district court's decision was the attorney's medical condition, and concluded that the attorney's medical condition was good cause for granting a continuance because it was an unforeseen and exceptional circumstance. *Id.* at 977.

Here, in contrast, the district court found that the second specialist's diagnosis did not constitute an unforeseen and exceptional circumstance. The reasons given by the district court are supported by the record. Therefore, the district court did not abuse its discretion in denying Ms. Miller's motion for a continuance.

The judgment is reversed as to Ms. Miller's claim for lost earnings and the case is remanded for a new trial on that claim. In all other respects, the judgment is affirmed.

Judge GABRIEL and Judge CRISWELL * concur.

* Sitting by assignment of the Chief Justice under    provisions of Colo. Const. art. VI, § 5(3), and