25CA1102 Kahm v Hospice of Metro 05-28-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1102
City and County of Denver District Court No. 24CV31249
Honorable Christopher J. Baumann, Judge

---

Karla Kahm, individually and as heir at law of Richard Kahm, deceased,

Plaintiff-Appellant,

v.

Hospice of Metro Denver, Inc., d/b/a The Denver Hospice, a Colorado nonprofit corporation,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE MOULTRIE
Gomez and Berger*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 28, 2026

---

Law Offices of J.M. Reinan, P.C., Jerome M. Reinan, Jordana Griff Gingrass, Denver, Colorado, for Plaintiff-Appellant

Hall Booth Smith, P.C., Brenda S. McClearn, Greenwood Village, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Plaintiff, Karla Kahm, appeals the trial court's judgment denying various pretrial motions.  We affirm.

## I.    Factual Background

¶ 2    Karla[1] is the daughter and heir at law of Richard Kahm.  Karla became Richard's primary caregiver after he was diagnosed with dementia.  In November 2023, Karla, as Richard's medical proxy, consented to Richard receiving hospice services from The Denver Hospice (TDH).  He received in-home hospice services until mid-December when Karla admitted him to TDH's inpatient care center (ICC) for a short respite stay.

¶ 3    At the time of Richard's admission, Karla signed documents authorizing TDH to provide Richard with medications that would maximize his comfort level.  TDH's clinical notes about Richard state that, while at home, he was being treated for various ailments including agitation but was refusing medications.  Upon Richard's admission to the ICC, nurse practitioner Tracy Fehr examined Richard.  She created a medication plan of care that included,

---

[1] To avoid confusion between those who share a last name, we refer to parties in this opinion by their first names.  We intend no disrespect in doing so.

among other things, Ativan for anxiety, Haldol for agitation, and morphine for pain.

¶ 4     Karla called TDH shortly after Richard's admission into the ICC and told one of the nurses that Haldol had a paradoxical effect on Richard, meaning he would become violent. Nevertheless, TDH providers administered Ativan, Haldol, and morphine (collectively, the sedating medications) to Richard twice during his first and second days in the ICC. When Karla called TDH on the second day and spoke to nurses, she expressed that she was upset about the medications they were giving Richard and said that Ativan also had a paradoxical effect on Richard. She requested that providers stop giving him medications. Clinical notes from various nurses stated that Richard didn't exhibit a paradoxical effect to Ativan or Haldol; rather, he showed a good response to receiving those medications after showing signs of anxiety and restlessness.

¶ 5     Providers didn't give Richard Ativan or Haldol on the third day, but they did give him morphine. At the end of Richard's third day in the ICC, Karla revoked her consent to hospice services and had Richard transferred to a hospital to receive fluids due to her concern that Richard had become dehydrated during his stay in the

ICC.  Shortly thereafter, Richard was admitted into a rehabilitation facility operated by the Julia Temple Center (JTC).

¶ 6    In January 2024, while Richard was in JTC's care, he fell and broke his hip, which required surgery.  He passed away approximately four months later.

## II.    Procedural Background

¶ 7    In April 2024, shortly before Richard passed away, Karla filed a complaint, as Richard's next friend,[2] against TDH and JTC.  In the initial complaint, Karla asserted negligence claims against both TDH and JTC, and breach of fiduciary duty and breach of contract claims against TDH.  A month later, and after Richard had passed away, she filed a first amended complaint and amended the negligence claims to wrongful death claims.

¶ 8    The court set a nine-day jury trial for June 2025.  The parties filed a proposed joint case management order (CMO), which the court adopted in June 2024 after modifying the parties' proposed dates for expert report disclosures and the close of discovery.  Per the CMO, discovery closed at the end of April 2025.

---

[2] C.R.C.P. 17(c) allows an incompetent person's representative to sue on their behalf as their "next friend."

¶ 9    About six months before trial, JTC reached a settlement with Karla and was dismissed from the case.  Around the same time, Karla's counsel deposed Dr. Kimberly Bennett — Richard's hospice physician while he was receiving in-home services — and Ernesto Lopez — TDH's president.  Karla's counsel also scheduled taking Fehr's deposition.  However, because the parties had mediation scheduled for early March 2025, counsel for both parties agreed to postpone Fehr's deposition until after mediation.

¶ 10    About a week and a half after the unsuccessful mediation, Karla filed a "Motion for Leave to Amend Complaint" (motion to amend), a proposed second amended complaint, and a "Motion for Continuance of Trial and Existing Case Management Deadlines" (motion to continue).  In the motion to amend, Karla sought to dismiss the wrongful death and breach of contract claims and add four new claims — violation of the Colorado Consumer Protection Act, fraud, extreme and outrageous conduct, and civil conspiracy.  She also sought to add a claim for exemplary damages under section 13-64-302.5(3), C.R.S. 2025, and to add Fehr as a defendant.

¶ 11    In support of the request to amend her complaint, Karla argued that JTC's dismissal required her to "reformulate the facts and claims" in her first amended complaint. She also argued that there was a "significant change" in her "understanding of the facts gained through discovery" and that the depositions "unveiled facts previously unknown that require[ed] her to amend her [c]omplaint to allege those facts and the new claims that accompany those facts." Specifically, she asserted that she had learned that TDH had a "standing order" to give all patients, regardless of consent, the sedating medications upon their admission to the ICC. She argued that because the new evidence changed the way she needed to take discovery and prepare for trial, she also needed to continue the June 2025 trial dates and reset the discovery deadlines.

¶ 12    A couple of days later, and on the same date that expert disclosures were due, Karla's counsel filed a motion requesting to stay the deadline for disclosing experts (motion to stay deadlines) pending the court's ruling on her other motions.

¶ 13    TDH opposed the motions. It argued that the court should deny the motion to amend based on Karla's undue delay, undue prejudice, and futility of amendment. TDH argued the court should

5

deny the motions to continue and to stay because Karla hadn't demonstrated good cause for either request. TDH also filed a motion for summary judgment, noting that Karla needed expert testimony to support her claims, but she hadn't disclosed any experts before the disclosure deadline passed.

¶ 14 The court held a hearing on Karla's motions a month before the scheduled start of the jury trial. The court said that it understood the basis for Karla's request for a continuance to be her assertion that she learned "new information" from Lopez's deposition and during mediation that TDH had "a standing order to medicate all of its patients, sedating them upon admission." The court asked Karla's counsel to direct it to a specific page where Lopez indicated that TDH had a standing order for the sedating medications.

¶ 15 Karla's counsel admitted that they couldn't pinpoint any place in Lopez's deposition where he admitted that a standing order to administer the sedating medications existed. Instead, Karla's counsel argued that amending her complaint and continuing the trial were necessary because, during a predeposition meeting that Karla recorded, Lopez said that Richard was "mistakenly"

administered the sedating medications contrary to Karla's consent; then Lopez, in a subsequent deposition, "backed-off" that position but acknowledged that Richard was given the sedating medications because Fehr deemed those medications appropriate; and later during mediation, TDH posited it had a standing order to medicate people upon admission to the ICC.

¶ 16 For its part, TDH denied that a standing order for the sedating medications existed, which it informed Karla of in its response to the written discovery requests she issued after the depositions and mediation. TDH asked the court to deny Karla's motions because her motions weren't "based on learning any new information" but rather were based on "new ideas in [p]laintiff's counsel's head based on old evidence."

¶ 17 After hearing argument from counsel for both parties, the court denied Karla's motions. In denying the motion to amend, the court said it couldn't conclude that Karla learned new information during discovery that would support amending her complaint. The court noted that, although the parties disputed the reason *why* TDH administered the sedating medications to Richard, the fact that the medications were administered without Karla's consent

was information contained in the first amended complaint. The court found that resolving any inconsistencies in Lopez's statements was up to the jury.

¶ 18     The court also determined that Karla's resolution of her claim against JTC didn't warrant allowing her to rewrite her complaint to add multiple new claims against TDH. Likewise, the court found that Fehr had been a central figure from the outset of the case, so amending the complaint to add her as a defendant wasn't warranted because it would double the claims and "significantly expand[] the litigation."

¶ 19     The court said it would revisit Karla's request to add exemplary damages if evidence of willful and wanton conduct came out at trial.

¶ 20     Because the court concluded that new information hadn't been uncovered during discovery, it found that Karla hadn't established good cause to continue the trial or conduct further discovery.

¶ 21     Karla's counsel acknowledged the court's rulings and expressed concerns about their ability to move forward on her existing claims without expert witnesses. Thus, at the conclusion

of the hearing, Karla's counsel withdrew the wrongful death claim.

Shortly after the hearing, Karla voluntarily withdrew the breach of

contract claim and, because Karla conceded expert testimony was

necessary to support the breach of fiduciary claim, the court

concluded that Karla had effectively confessed TDH's motion for

summary judgment.[3]  Karla filed an unopposed motion for

certification under C.R.C.P. 54(b), which the court granted.

Although the court improperly certified the judgment under Rule

54(b),[4] it alternatively granted TDH's motion for summary

judgment.  As a result, the court's order was a final judgment

because it resolved Karla's only remaining claim — breach of

---

[3] A party is entitled to summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  C.R.C.P. 56(c); *Miller v. Van Newkirk*, 628 P.2d 143, 145 (Colo. App. 1980); *see also Martinez v. Badis*, 842 P.2d 245, 252 (Colo. 1992) ("[T]he plaintiff alleging a breach of fiduciary duty arising from [a professional] relationship must establish by means of expert testimony the applicable standard of care and the defendant's failure to adhere to that standard of care.").

[4] "C.R.C.P. 54(b) requires, among other things, that an entire claim for relief be finally adjudicated."  *Wilson v. Kennedy*, 2020 COA 122, ¶ 30 (quoting *Harding Glass Co. v. Jones*, 640 P.2d 1123, 1127 (Colo. 1982)).

fiduciary duty. Accordingly, this court has jurisdiction to consider Karla's appeal.

¶ 22    Karla argues that the court abused its discretion by denying her motions to amend and to continue and by prohibiting her from conducting additional discovery. Because we disagree, we affirm the judgment.

### III.    Applicable Legal Principles

### A.    Amending Pleadings

¶ 23    C.R.C.P. 15(a) requires parties to obtain court authorization to amend pleadings in certain instances. "[T]rial courts are encouraged to look favorably on requests to amend pleadings." *Am. C.L. Union of Colo. v. Whitman*, 159 P.3d 707, 712 (Colo. App. 2006); *see* C.R.C.P. 15(a) (leave to amend pleadings "shall be freely given when justice so requires"). Whether a court should grant a plaintiff's request for leave to amend depends on the specific facts and circumstances of the case. *Benton v. Adams*, 56 P.3d 81, 86 (Colo. 2002).

¶ 24    Although leave should be given freely, a court may deny a request for leave to amend because of "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies in the pleadings

10

via prior amendments, undue prejudice to the opposing party, and futility of amendment." *Id.*  *But see Eagle River Mobile Home Park, Ltd. v. Dist. Ct.*, 647 P.2d 660, 663 (Colo. 1982) ("[D]elay alone, without any specifically resulting prejudice . . . generally is not a sufficient basis for precluding a party from amending its complaint." (citation modified)).

¶ 25    To avoid undue delay, "[p]arties should join issues and other parties needed for just and efficient resolution of the case as early as practicable in the litigation."  *Benton*, 56 P.3d at 88.  A trial court may properly deny a motion to amend when a moving party knew the basis for the amendment when they filed their original pleading and failed to state an acceptable reason for the delay in bringing the proposed amendment.  *Polk v. Denv. Dist. Ct.*, 849 P.2d 23, 27 (Colo. 1993).

¶ 26    The court "must assess the motion to amend in light of the totality of the circumstances," meaning "[i]t must balance the policy favoring the amendments of pleadings against the burdens which granting the amendment may impose on the other part[y]."  *Id.* at 26.

B.    Exemplary Damages Under Section 13-64-302.5(3)

¶ 27    When a plaintiff asserts a negligence claim against a healthcare professional, they may seek to amend their pleadings to include a request for exemplary damages under section 13-64-302.5(3), but "only after substantial completion of discovery and only after the plaintiff establishes prima facie proof of a triable issue." § 13-64-302.5(3).  If the court allows the plaintiff to amend their complaint, then "it may also, in its discretion, permit additional discovery on the question of exemplary damages."  *Id.*

¶ 28    "Prima facie proof of a triable issue of exemplary damages is established by a showing of a reasonable likelihood that the issue will ultimately be submitted to the jury for resolution," which "may be established through discovery, by evidentiary means, or by an offer of proof."  *Stamp v. Vail Corp.*, 172 P.3d 437, 449 (Colo. 2007) (citation modified).

C.    Requests for Continuance

¶ 29    A party's motion to continue must be supported by good cause.  *See* C.R.C.P. 121 § 1-11.  "Good cause exists when there are unforeseen and exceptional circumstances requiring a

12

continuance." *Miller v. Brannon*, 207 P.3d 923, 932 (Colo. App. 2009).

¶ 30    "In determining whether to grant a continuance, the court should consider the circumstances of the particular case, weighing the right of the party requesting the continuance to a fair hearing against the prejudice that may result from delay." *Butler v. Farner*, 704 P.2d 853, 858 (Colo. 1985); *see also Miller*, 207 P.3d at 932 ("[A] court should be mindful of the problems associated with a delay of trial, including devaluation of a judgment, anxiety in litigants, uncertainty for lawyers, loss and deterioration of evidence, waste of court resources, increase of the costs of litigation, and confusion and conflict in the allocation of court resources.").

## D.    Standard of Review

¶ 31    The decision to grant or deny a motion for leave to amend a complaint, to add exemplary damages, or to continue trial is left to the sound discretion of the trial court. *See Polk*, 849 P.2d at 25 (abuse of discretion standard for pleading amendments); *Stamp*, 172 P.3d at 449 (abuse of discretion standard for ruling on exemplary damages amendment); *Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 976 (Colo. 1999) (abuse of discretion

13

standard for continuances). A court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair" or when it misapplies the law. *Rains v. Barber*, 2018 CO 61, ¶ 8 (citation omitted).

## IV. The Court Didn't Abuse Its Discretion When It Denied Karla's Motions

### A. Motion to Amend

¶ 32 Karla contends the court erred by denying her motion to amend because (1) the discovery of new information necessitated her amendment; (2) the court didn't find that her amendment was brought in bad faith or through misconduct; and (3) the court didn't analyze her request to add exemplary damages. We disagree with each of her contentions.

¶ 33 As an initial matter, we reject Karla's assertion that our review of the court's determination of her request to amend her complaint to add exemplary damages involves a mixed question of fact and law. Because we aren't reviewing the court's statutory interpretation of section 13-64-302.5(3), we review the court's determination for an abuse of discretion. *See Stamp*, 172 P.3d at 449.

## 1. Alleged New Information

¶ 34 Karla asserts that she didn't allege facts that TDH had a "policy or practice of sedating all of its ICC patients on admission" in her first amended complaint because she only learned of this "new information," which formed the factual basis for the new claims, through depositions and mediation. She similarly asserts that information she learned during Lopez's deposition required her to join Fehr as a defendant because she previously believed that Fehr's medication order was a mistake rather than intentional. Karla thus argues that "[t]he district court's findings and conclusions are both contrary to the weight of the record evidence and unreasonable in context." We aren't persuaded.

¶ 35 The court's findings reflect that it thoroughly reviewed the pleadings and depositions submitted by the parties before the hearing and ultimately concluded that Karla's motion to amend was unduly delayed, which caused undue prejudice to TDH.

¶ 36 As the court noted, Karla already knew that TDH staff intentionally administered the sedating medications to Richard because that information was included in her first amended complaint. The record shows that Karla requested Richard's

15

medical records from TDH days after she revoked hospice services, which was approximately four months before she initiated litigation.

¶ 37 The record also refutes that Karla learned through the depositions that there was a standing order. Indeed, Karla's counsel couldn't identify in the deposition testimony submitted to the court where TDH, through Lopez or otherwise, made such an admission. And, even assuming without deciding, that a standing order existed and that Karla learned of its existence during the March 2025 mediation, she doesn't explain why she didn't attempt to conduct discovery earlier in the case when the discovery deadlines were established in June 2024. *See Benton*, 56 P.3d at 88; *Union Ins. Co. v. Kjeldgaard*, 820 P.2d 1183, 1186 (Colo. App. 1991) (A party who makes a belated request for leave to amend has the burden of demonstrating a justification — such as lack of knowledge, mistake, inadvertence, or some other reason — for the untimely request). Likewise, Karla knew about Fehr's involvement in administering Richard's medications before she initiated litigation and could have joined Fehr at the outset of the litigation or in her first amended complaint. *See Benton*, 56 P.3d at 88.

¶ 38    In objecting to the motion to amend, TDH argued that it would be prejudiced because the new claims would "significantly alter the basic thrust" of the relief Karla sought, require it to substantially change the defense it had been preparing for nearly a year, and potentially expose it to exemplary damages in the form of punitive or treble damages. And it asserted that, because Karla's new claims were based on information known to her throughout the case, they would be prejudiced by not being able to proceed to trial as scheduled.

¶ 39    The court ultimately found that granting Karla's motion to amend would "significantly" expand the litigation by adding twice as many claims and going "down a road that [Karla] had not previously [] sought." Karla doesn't challenge this finding, other than to say that any prejudice could have been mitigated by a continuance. But this argument misses the point — part of the prejudice to TDH was that it was ready to proceed to trial on the scheduled date. And a continuance only mitigates prejudice to an opposing party if the prejudice asserted is an inadequate amount of time to prepare. *Eagle River*, 647 P.2d at 663-64.

¶ 40    Thus, the court's implicit findings that Karla's motion to amend was unduly delayed and unduly prejudicial are record-supported.  Accordingly, we conclude that the court didn't abuse its discretion by denying the motion to amend.  *See Foster v. Phillips*, 6 P.3d 791, 796 (Colo. App. 1999); *see also Polk*, 849 P.2d at 28 (where a party fails to provide a reasonable excuse for their untimely motion for leave to amend, "[t]he policy favoring amendment of pleadings does not prevail").

### 2.    Failure To Address Bad Faith or Misconduct

¶ 41    Karla argues that "[c]learly-established law stands for the proposition that a district court should not deny a motion to amend a complaint in the absence of some sort of dilatory or bad faith conduct by the moving party."  We disagree.

¶ 42    Karla doesn't provide any authority for the proposition that a court must first find a moving party requested leave to amend in bad faith or through misconduct before it can deny a motion to amend.  Rather, as we addressed above, the combination of undue delay and prejudice to the opposing party is sufficient to support the court's denial.  *See Benton*, 56 P.3d at 86; *Eagle River*, 647 P.2d at 663.

### 3. Exemplary Damages

¶ 43 Karla argues that because section 13-64-302.5(3) requires substantial completion of discovery before exemplary damages may be sought, she couldn't move to amend the complaint to add a request for exemplary damages until after she conducted depositions. She further argues that the court erred by indicating that it would reconsider her request for exemplary damages if willful and wanton evidence came out at trial because the statute allows additional discovery, and she couldn't conduct additional discovery during trial.[5]

¶ 44 But, as we've just concluded, the court didn't err by declining to allow Karla to amend her complaint a second time. Because her request to add a claim for exemplary damages was one of her proposed amendments, we don't address this issue further. *See Sedgwick Props. Dev. Corp. v. Hinds*, 2019 COA 102, ¶ 31 (noting

---

[5] She also argues that the court didn't consider section 13-64-302.5(3), C.R.S. 2025, when it found that she could have or should have brought her exemplary damages claim in the original or first amended complaint. But the court didn't make such a finding. Accordingly, this argument is unsupported and conclusory, and we won't consider it. *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010).

that the "cardinal principle of judicial restraint" is not deciding issues unnecessary to the resolution of the case).

### B. Motion to Continue

¶ 45 Finally, Karla argues that the court abused its discretion when it denied her motion to continue. Karla again relies on her argument that she learned new facts from Lopez's deposition, which she asserts required her to take additional discovery for the purpose of proving exemplary damages and uncovering the nature and extent of TDH's standing policy. She also argues that a continuance was necessary for her to develop expert testimony that she hadn't contemplated before filing the motion to amend. We aren't persuaded.

¶ 46 The record demonstrates that Karla had the opportunity to, and indeed did, conduct additional discovery after mediation in an attempt to explore her new theory that TDH had a standing order. Karla's counsel conceded that they sent TDH written discovery after mediation in which they asked questions about the standing order. The depositions were held in mid-January 2025, the mediation occurred in early March 2025, and the discovery deadline expired at the end of April 2025. Karla therefore had a minimum of

approximately six weeks after she contends she learned of the standing order to conduct additional discovery. During this period of time, Karla's counsel could have deposed Fehr, but they chose not to reschedule her deposition.

¶ 47 Similarly, Karla was aware of the expert disclosure deadline, which expired two weeks after the scheduled mediation. It's undisputed that she didn't disclose any experts before that deadline and her motion to extend deadlines. At the hearing, Karla's counsel admitted they had made the strategic decision not to submit expert disclosures up to that point. Although Karla argues that "the trial continuance was necessary for Karla to develop expert testimony that she had not contemplated prior to filing her proposed Second Amended Complaint," she doesn't specify what expert testimony she believed needed to be developed.

¶ 48 Thus, Karla didn't assert any unforeseen and exceptional circumstances. *See Miller*, 207 P.3d at 932. The court accordingly found that Karla hadn't demonstrated good cause to continue the trial because, among other things, Karla's request was based on information that she had from the beginning of litigation.

¶ 49    Because the court's finding that Karla didn't demonstrate good cause has record support, we won't disturb it. *See id.* at 933 (affirming the court's denial of a continuance because the record supported that the moving party didn't demonstrate good cause). Accordingly, we conclude that the court didn't abuse its discretion when it denied Karla's motion to continue.

## V.    Disposition

¶ 50    The judgment is affirmed.

JUDGE GOMEZ and JUDGE BERGER concur.