24CA1482 Hudnall v Board 09-11-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1482
Fremont County District Court No. 23CV30018
Honorable Lynette M. Wenner, Judge

Samantha Hudnall,

Plaintiff-Appellee and Cross-Appellant,

v.

Board of County Commissioners of Fremont County, Colorado,

Appellant and Cross-Appellee,

and

Brandon Lucero,

Defendant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE SCHUTZ
Fox and Harris, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 11, 2025

Mehr Law, PLLC, Kevin Mehr, Colorado Springs, Colorado, for Plaintiff-Appellee and Cross-Appellant

Nathan Dumm & Mayer, PC, J. Andrew Nathan, Timothy M. Walsh, Denver, Colorado, for Defendant-Appellant and Cross-Appellee

Robert D. Sheesley, Rachel Bender, Denver, Colorado, for Amicus Curiae Colorado Municipal League

Samuel J. Light, Nick Cotton-Baez, Denver, Colorado, for Amicus Curiae Colorado Intergovernmental Rish Sharing Agency

Hall & Evans, L.L.C., Andrew D. Ringel, Denver, Colorado, for Amicus Curiae Colorado Counties, Inc.

No Appearance for Defendant

¶ 1     The Board of County Commissioners of Fremont County (the County) appeals the district court's entry of separate judgments against it and in favor of appellees, Samantha Hudnall and Marisa Palmas, for damages they incurred after Deputy Brandon Lucero sexually harassed them.[1]  We affirm the judgments.

## I.     Factual Background

¶ 2     Lucero was a detention deputy for the Fremont County Sheriff's Office.  He worked at the Fremont County Jail, where both Hudnall and Palmas were incarcerated.

¶ 3     In October 2021, Hudnall reported to Lucero's commander that Lucero had made inappropriate comments to her over the jail intercom system while observing her showering, passed lewd notes into her cell, and forcibly kissed her in her cell.  The notes included comments about watching Hudnall walk to and from the shower, romantic song lyrics, and sexual suggestions.  During a subsequent interview, Hudnall reported that Lucero made several sexually targeted comments, including that he enjoyed watching her shower

---

[1] Hudnall and Palmas filed separate lawsuits in Fremont County District Court against Lucero and the County, Fremont County Case Nos. 23CV30018 and 23CV30019.

and seeing her naked, and that he "wanted to have babies with her."

¶ 4 A month after Hudnall's report, Palmas revealed that she too received notes from Lucero asking about her relationship status and if she was willing to pursue a relationship with him. Palmas reported that Lucero said he watched her shower and made other sexually aggressive statements. Palmas also described an incident where Lucero entered her cell and touched her waist and face before leaving when her sleeping cellmate stirred.

¶ 5 After completing its investigation, the County fired Lucero, and the district attorney charged him with a class 6 felony (felony sexual conduct in a correctional institution) and a class 2 misdemeanor (first degree official misconduct). In July 2022, Lucero entered into a deferred judgment and sentence, pleading guilty to the misdemeanor charge of official misconduct. The court accepted the plea, dismissed the felony, and sentenced Lucero to a twelve-month deferred judgment and sentence, to be supervised by the probation department.

¶ 6 Lucero's guilty plea provided, "If I violate any . . . term or condition of [the sentence], then the [district court] may, after [a]

2

hearing, revoke my deferred sentence, find me guilty, and sentence me to any sentence authorized by law." Lucero successfully completed the deferred judgment and sentence in July 2023, and the court dismissed the charges against him.

¶ 7 The attorney representing Hudnall and Palmas reached out to the County in December 2022 to discuss the lawsuits that his clients intended to file against Lucero. The County forwarded the demand letter to its insurer. Thereafter, the County informed counsel that it would not indemnify Lucero or otherwise participate in the litigation. Counsel responded that regardless of the County's decision whether to indemnify Lucero, the County would be obligated to satisfy any uncollectible portion of any judgment that might be entered against him. The County disagreed and stood on its decision not to participate in the lawsuits.

## II. Procedural History

¶ 8 Hudnall and Palmas filed their claims for damages under section 13-21-131(4)(a), C.R.S. 2025, which was adopted as part of the Enhance Law Enforcement Integrity Act (ELEIA) and provides as follows:

[1] Notwithstanding any other provision of law, a peace officer's employer shall indemnify its peace officers for any liability incurred by the peace officer and for any judgment or settlement entered against the peace officer for claims arising pursuant to this section; except that, if the peace officer's employer determines on a case-by-case basis that the officer did not act upon a good faith and reasonable belief that the action was lawful, then the peace officer is personally liable and shall not be indemnified by the peace officer's employer for five percent of the judgment or settlement or twenty-five thousand dollars, whichever is less. [2] Notwithstanding any provision of this section to the contrary, if the peace officer's portion of the judgment is uncollectible from the peace officer, the peace officer's employer or insurance shall satisfy the full amount of the judgment or settlement. [3] A public entity does not have to indemnify a peace officer if the peace officer was convicted of a criminal violation for the conduct from which the claim arises unless the peace officer's employer was a causal factor in the violation, through its action or inaction.

¶ 9    Lucero failed to respond to either complaint, and the district court entered a clerk's default against him in both cases. *See* C.R.C.P. 55(a). Hudnall and Palmas subsequently moved for the entry of default judgments. The district court entered judgment in favor of Hudnall in the amount of $81,637, inclusive of accrued interest, attorney fees, and costs. C.R.C.P. 55(b). The court entered

4

judgment in favor of Palmas in the amount of $46,720, inclusive of accrued interest, attorney fees, and costs.

¶ 10 Hudnall and Palmas served creditor's interrogatories on Lucero, but he did not respond. The court ordered Lucero to show cause why he should not be held in contempt in both cases. Lucero failed to respond, and warrants issued for his arrest. In March 2024, Hudnall and Palmas filed motions to enforce the judgments against the County as Lucero's former employer.

¶ 11 The County filed responses opposing the motions. The County did not contest that the judgments were uncollectible from Lucero. But the County argued that under the clear and unambiguous terms of the third sentence of section 13-21-131(4)(a), it had no obligation to indemnify Lucero because he had been convicted of a criminal violation for the conduct that gave rise to the judgments.

This contention, among others, formed the basis of the County's motions for dismissal under C.R.C.P. 12(b)(5).[2]

¶ 12    In their responses and replies, Hudnall and Palmas argued that Lucero's guilty plea did not relieve the County of its obligation to satisfy the judgments. Rather, they argued, the County was obligated to satisfy the judgments because they were uncollectible against Lucero and the County's liability to them was independent of any obligation to indemnify Lucero.

¶ 13    Alternatively, Hudnall and Palmas argued that even if the court accepted the County's interpretation of section 13-21-131(4)(a), the County was obligated to satisfy the judgments because Lucero was not convicted of a crime. On the contrary, they argued, no conviction was entered against Lucero because he successfully completed his deferred judgment and sentence.

---

[2] The County also argued that it was not a party to the case and had never been properly served or joined in the action, and therefore judgment could not be entered against it. Hudnall and Palmas responded to this argument by filing motions for permissive joinder of the County in both actions. The district court granted the joinder motions, and the County does not challenge these orders on appeal.

¶ 14     The district court granted the motions to enforce the judgments against the County.  The court reasoned that under the plain and unambiguous language of the second sentence of section 13-21-131(4)(a), the County was obligated to satisfy the judgments because the judgments were uncollectible against Lucero, and this obligation was independent of the County's obligation to indemnify Lucero.

¶ 15     The County moved for reconsideration.  It argued that section 13-21-131(4)(a) did not authorize a claim for relief against it.  And, again relying on Lucero's guilty plea and the third sentence of section 13-21-131(4)(a), the County argued it had no obligation to indemnify Lucero and therefore no liability to Hudnall or Palmas.

¶ 16     The district court denied the motions to reconsider.  After quoting the Black's Law Dictionary definitions of "indemnify" and "satisfaction," the court concluded that the terms have different meanings and that the General Assembly selected the respective terms to address different circumstances.  The court then reiterated its conclusion that the "indemnify" language of section 13-21-131(4)(a) related to the County's obligation relative to the peace officer, while the use of the word "satisfy" related to the County's

7

obligation to pay any judgments entered against a peace officer. The court reasoned that its conclusion gave effect to the different terms adopted by the General Assembly and all the language in section 13-21-131(4)(a). The County appeals this ruling.

¶ 17     Notwithstanding its interpretation of the statute, the district court also addressed Hudnall and Palmas's argument that the deferred judgment and sentence was not a conviction. On this issue, the court agreed with the County, concluding that despite Lucero's successful completion of the deferred judgment and sentence, he nevertheless "was convicted" of a criminal violation consistent with how that phrase is used in the last sentence of section 13-21-131(4)(a). Hudnall and Palmas cross-appeal this ruling.

### III.   Analysis

¶ 18     The parties acknowledge that their differing interpretations concerning the indemnify and satisfy language of section 13-21-131(4)(a) is rendered moot if we conclude that Lucero was not convicted of a criminal violation. We agree. Based on the unambiguous language of the statute, if Lucero was not convicted

of a crime, the County must satisfy the Hudnall and Palmas judgments. Thus, we begin by addressing this issue.

### A. The District Court's Ruling and the Parties' Contentions

¶ 19    The district court began by acknowledging that Lucero successfully completed his deferred judgment and sentence. It then quoted section 18-1.3-102(2), C.R.S 2025, for the proposition that, "[u]pon full compliance with [the deferred judgment and sentence's] conditions by the defendant, the plea of guilty previously entered shall be withdrawn and the charge upon which the judgment and sentence of the court was deferred shall be dismissed with prejudice."

¶ 20    Despite this language, the court concluded that Lucero "was convicted" of a criminal violation. The court cited two additional statutes to support this conclusion.

¶ 21    First, the court quoted section 18-1.3-107(8)(c), C.R.S. 2025, which provides, "'Conviction' or 'convicted' means a verdict of guilty by a judge or jury or a plea of guilty or nolo contendere that is accepted by the court . . . . 'Conviction' or 'convicted' also includes having received a deferred judgment and sentence."

¶ 22    Next, the court turned to section 16-7-206(3), C.R.S. 2025, which provides, "[A] plea of guilty acts as a waiver by the defendant of the right to trial by jury on all issues including the determination of the penalty to be assessed, and the acceptance of such plea also acts as a conviction for the offense." From these two statutes, the court reasoned that Lucero "was convicted of a criminal violation."

¶ 23    On appeal, Hudnall and Palmas argue that, because Lucero successfully completed his deferred judgment and sentence, he was not convicted of a criminal violation; instead, his plea was withdrawn and no conviction was entered against him. Moreover, they note that unlike the definitions relied on by the district court, the word "convicted" is not defined in section 13-21-131(4)(a) to include pleas to a deferred judgment and sentence. Moreover, Hudnall and Palmas note that when the General Assembly intends an expansive definition of the term "convicted" to include a deferred judgment and sentence, it says so expressly. And they cite another provision of ELEIA and other statutes that reflect the General Assembly's use of such expansive definitions when intending a broad application of the term "convicted." In the absence of such a legislative directive, Hudnall and Palmas argue the district court

erred by concluding that Lucero was convicted of a crime based on the same conduct that gave rise to their judgments.

¶ 24     In contrast to the position it took in the district court, the County argues on appeal that the third sentence of section 13-21-131(4)(a) is ambiguous.  Nonetheless, it reasons that the district court correctly resolved the ambiguity by concluding that the phrase "was convicted" applies to a successfully completed deferred judgment and sentence.  For the first time on appeal, the County also argues that the opposite conclusion would deprive it of due process and lead to an unfair and unreasonable result that is contrary to the General Assembly's intent.  Finally, the County argues — again for the first time on appeal — that the district court incorrectly concluded that Lucero was a peace officer when he committed the underlying acts.

¶ 25     Hudnall and Palmas claim that the County did not argue in the district court that the phrase "was convicted" was ambiguous or that the interpretation argued by Hudnall and Palmas would render the statute unconstitutional.  They also note that the County never contended in the district court that Lucero was not acting as a peace officer at the time of his tortious conduct.

## B. Preservation

¶ 26    Subject to limited exceptions not applicable here, we will not address arguments raised for the first time on appeal. *Gold Hill Dev. Co., L.P. v. TSG Ski & Golf, LLC*, 2015 COA 177, ¶ 18.

¶ 27    In civil cases, an argument is preserved for appeal when it is presented to, considered by, or ruled upon by a district court. *Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25. The asserting party must present "the sum and substance of the argument" to the district court. *Id.* (quoting *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50). If a district court rules on an issue that was not clearly presented by the parties or rules on an issue sua sponte, the issue is preserved for purposes of appeal. *See Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶¶ 21-23; *Battle N., LLC v. Sensible Hous. Co.*, 2015 COA 83, ¶ 13.

¶ 28    The County does not point to any portion of the record where it preserved an argument that the statute was ambiguous or unconstitutional, or that the interpretation of the statute urged by Hudnall and Palmas would render the statute unconstitutional. The County acknowledges that it did not argue that the statute was unconstitutional below but asserts on appeal that it is only

12

challenging the "district court's interpretation of [the statute]." As Hudnall and Palmas correctly note, however, the County's arguments are not based on the district court's interpretation of the statute, but rather on the alleged ambiguities resulting from the specific language of the statute itself. And this contention is directly contrary to the County's repeated arguments below that the statute is clear and unambiguous, and that its interpretation was supported by the statute's clear terms.

¶ 29    Unsurprisingly, the district court did not address any arguments that section 13-21-131(4)(a) was ambiguous or unconstitutional. Thus, except to the extent that our de novo review requires us to determine whether the phrase "was convicted" is ambiguous — and if so to resolve any ambiguities — we decline to address the County's constitutional contentions. *See, e.g.*, *O'Quinn v. Baca*, 250 P.3d 629, 630 (Colo. App. 2010) (generally, we do not consider challenges to the constitutionality of a statute that are raised for the first time on appeal).

¶ 30    Similarly, the County did not argue below that Lucero was not a peace officer when he sexually harassed and assaulted Hudnall and Palmas. And because that issue was not contested, the district

court did not address it.  Accordingly, we conclude this issue is also unpreserved and do not address it further.  *Gold Hill,* ¶ 18.

### C.    Standard of Review

¶ 31    We review the interpretation of a statute de novo.  *People in Interest of G.S.S.,* 2020 CO 32, ¶ 11; *Cisneros v. Elder,* 2022 CO 13M, ¶ 21.  Whether a statute is ambiguous is a question of law that we review de novo.  *Mounkes v. Indus. Claim Appeals Off.,* 251 P.3d 485, 487 (Colo. App. 2010).

### D.    Rules of Statutory Construction

¶ 32    "In construing a statute, we aim to effectuate the legislature's intent."  *Elder,* ¶ 21.  We therefore "consider the entire statutory scheme to give consistent, harmonious, and sensible effect to all of its parts, and we construe words and phrases in accordance with their plain and ordinary meanings."  *Id.* (quoting *Ryser v. Shelter Mut. Ins. Co.,* 2021 CO 11, ¶ 14).  And we avoid statutory interpretations that lead to an absurd or illogical result.  *Tucker v. Volunteers of Am. Colo. Branch,* 211 P.3d 708, 711 (Colo. App. 2008), *aff'd,* 242 P.3d 1080 (Colo. 2010).

¶ 33    Only if a statute is ambiguous — "that is, reasonably susceptible to more than one interpretation" — do we use other

interpretive aids to discern the legislature's intent, *Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 13, including the object sought to be attained, the circumstances under which the statute was enacted, and the legislative history, if any. § 2-4-203(1)(a)-(c), C.R.S. 2025.

E.    Is the Phrase "Was Convicted" Ambiguous?

¶ 34    As previously noted, the parties have different perspectives on whether the phrase "was convicted" — as used in the third sentence of section 13-21-131(4)(a) — is ambiguous with respect to whether it encompasses a successfully completed deferred judgment and sentence. Both parties' positions have some initial appeal. As Hudnall and Palmas argue, the phrase "was convicted," in and of itself, or even in the context of the other words used in section 13-21-131(4)(a), is not inherently ambiguous.

¶ 35    On the other hand, as the County notes, the supreme court has counseled that "[t]he term 'conviction' may be interpreted differently depending upon the statute in which it is used and the issue in a particular case." *Hafelfinger v. Dist. Ct.*, 674 P.2d 375, 376 (Colo. 1984). The supreme court has also counseled that "in construing the word 'conviction,' the key factor to be considered is the legislative intent behind the use of the word in the statute

involved." *Id.* at 377. Thus, depending on the context of the statute and the General Assembly's intent, the phrase "was convicted" is susceptible to more than one meaning. We therefore agree with the County's argument that the meaning of "was convicted" in the third sentence of section 13-21-131(4)(a) is ambiguous. *See Benefield v. Colo. Republican Party*, 2014 CO 57, ¶ 11 (If statutory language is subject to "more than one reasonable understanding, it is considered to be ambiguous and must be construed.").

F.     The Statutory Provisions Cited by the District Court

¶ 36     The district court's analysis relied in large part on sections 18-1.3-107(8) and 16-7-206(3). We conclude that the court's reliance on these statutes was misplaced.

¶ 37     Section 18-1.3-107 addresses the circumstances in which a criminal defendant may obtain "collateral relief in the criminal case for the purpose of preserving or enhancing the defendant's employment or employment prospects and to improve the defendant's likelihood of success in the community." § 18-1.3-107(1). To further these ends, the criminal court may enter

> [a]n order of collateral relief [that] may relieve a
> defendant of any collateral consequences of
> the conviction, whether in housing or

16

employment barriers or any other sanction or disqualification that the court shall specify, including but not limited to statutory, regulatory, or other collateral consequences that the court may see fit to relieve that will assist the defendant in successfully reintegrating into the community.

§ 18-1.3-107(3).

¶ 38     The central purpose of section 18-1.3-107 is to assist criminal defendants' reintegration into the community. In this remedial context, the General Assembly included an expansive definition of conviction so that the benefits of collateral relief would apply not only to someone who was found guilty and served their sentence, but also to those who successfully complete a deferred judgment and sentence.

¶ 39     In contrast to the rehabilitative purposes of section 18-1.3-107, section 13-21-131 is intended to address the circumstances in which a government entity is responsible for paying a judgment entered against a peace officer who violated a citizen's constitutional rights. Given the disparate purposes of these statutes, we do not see how section 18-1.3-107 is instructive to our interpretation of section 13-21-131(4)(a). This conclusion is amplified by the fact that section 13-21-131(4)(a) uses only the

undefined phrase "was convicted," while section 18-1.3-107(8)(c) contains an expansive definition of conviction that encompasses a successfully completed deferred judgment and sentence.

¶ 40    Nor are we persuaded that section 16-7-206(3) is instructive. While the district court correctly quoted the statute's language that the acceptance of a guilty plea "acts as a conviction for the offense," that does not complete the pertinent analysis.

¶ 41    In *Hafelfinger*, the supreme court cited section 16-7-206(3) when concluding that the phrase "record of conviction" included a then-uncompleted deferred judgment and sentence.  674 P.2d at 376.  The district court cited the *Hafelfinger* decision to support its interpretation of section 13-21-131(4)(a), as does the County on appeal.  But they fail to note that, in *Hafelfinger*, the supreme court also stated the following:

> The question of whether a person has a record of "conviction" . . . after successfully completing the period of the deferred sentence is not before us.  We note, however, that under our statutory scheme, the defendant in such a case would no longer be "convicted."  For the purposes of the statute, [the predecessor to section 18-1.3-102(2)] provides in pertinent part: "Upon full compliance with [the conditions of deferral imposed] by the defendant, the plea of guilty previously entered

18

> *shall be withdrawn* and the action against the defendant dismissed with prejudice." (Emphasis added.) When the plea is withdrawn, the earlier acceptance of the guilty plea by the court is vitiated and section 16-7-206(3) does not apply. Moreover, C.R.E. 410 would apply to such a situation. C.R.E. 410 states in pertinent part: "Except as otherwise provided by statutes of the State of Colorado, evidence of a plea of guilty, later withdrawn, . . . to the crime charged or any other crime, . . . is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer." Thus, evidence of the guilty plea is no longer admissible after successful completion of the period of the deferred sentence.

*Hafelfinger*, 674 P.2d at 377 n.3; *see also Weber v. Colo. State Bd. of Nursing*, 830 P.2d 1128, 1133 (Colo. App. 1992) ("[A] professional licensing board may not discipline a licensee under § 12–38–117(1)(b)[, C.R.S. 1991,[3]] who has successfully completed a deferred judgment for having been convicted of a felony or having pled guilty to a felony.").

¶ 42    In *People v. Perry*, 252 P.3d 45 (Colo. App. 2010), a division of this court addressed whether a person who pleaded guilty to a

---

[3] The statute was subsequently amended and now provides a definition of "convicted" that expressly includes "imposing a deferred sentence." § 12-255-120(1)(b)(II)(a), C.R.S. 2025.

deferred judgment and sentence on a sexual offense was required to register as a sex offender. In doing so, the panel was required to interpret the interplay of three statutory provisions addressing sex offender registration requirements. *Id.* at 47-48.

¶ 43    Section 16-22-103(1)(a), C.R.S. 2025 requires registration for any person who "was convicted on or after July 1, 1991, in the state of Colorado, of an unlawful sexual offense." *See Perry*, 252 P.3d at 47. Relatedly, section 16-22-102(3), C.R.S. 2025, provides as follows:

> "Convicted" or "conviction" means having received a verdict of guilty by a judge or jury, having pleaded guilty or nolo contendere, having received a disposition as a juvenile, having been adjudicated a juvenile delinquent, *or having received a deferred judgment and sentence or a deferred adjudication.*

Emphasis added.

¶ 44    On the issue of deregistration, section 16-22-113(1)(d), C.R.S. 2025, authorizes a person to petition to deregister from the sex offender registration list if they successfully complete a deferred judgment and sentence and have not been subsequently convicted of any offense having a factual basis that involved unlawful sexual behavior. *Perry*, 252 P.3d at 47. Relatedly, section 16-22-

20

113(3)(b)(II), C.R.S. 2009, excluded certain persons from eligibility to deregister, including "[a]ny person who is convicted as an adult of sexual assault on a child." *See Perry*, 252 P.3d at 47.

¶ 45    The district court, applying these provisions, concluded that Perry was not eligible to deregister because, despite the successful completion of his deferred judgment and sentence, he still "is convicted" of the underlying sexual offense. On appeal, the panel reversed the district court's order. *Id.* at 50.

¶ 46    The panel began by recognizing that these statutory provisions created uncertainty whether a person who successfully completed a deferred judgment and sentence could petition to deregister. *Id.* at 47-48. Recognizing this tension, the panel framed the issues as follows:

> Whether there is any contextual obstacle to applying the definition of "convicted" in section 16–22–102(3) to the "is convicted" language of section 16–22–113(3)(b)(II) turns on the subsidiary question of whether the phrase "having received a deferred judgment" . . . includes a person who has "successful[ly] complet[ed] [a] deferred judgment and sentence" within the meaning of section 16-22-113(1)(d). If read in a vacuum, the phrase "having received a deferred judgment and sentence" in [section] 16–22–102(3) could be construed as applying beyond the time that a

21

> deferred judgment remains in effect because, arguably, an offender who has received a deferred judgment does not lose his status as a past *recipient* of a deferred judgment when the case is dismissed based on his successful completion.

*Perry*, 252 P.3d at 48.

¶ 47    In resolving the tension, the panel relied on *Hafelfinger*'s reasoning that a defendant who pleads guilty to a deferred judgment and sentence has a conviction for purposes of the statute governing recognizance bonds. *Id.* at 49 (citing *Hafelfinger*, 674 P.2d at 377 n.3). But once a defendant successfully completes a deferred judgment and sentence he is no longer convicted for the purposes of that statute. *Id.*

¶ 48    Applying this rationale, the panel concluded that the tension in the registration statutes could be obviated by interpreting "is convicted" to mean that a person who has received a deferred judgment and sentence only stands convicted until the successful completion of the deferred judgment and sentence, and after the successful completion, the defendant is no longer convicted of the criminal offense. *Id.*

¶ 49    The supreme court again interpreted the deregistration statute

in *People v. McCulley*, 2020 CO 40, ¶ 29.  The court framed the

issue as

> whether a defendant who successfully
> completes a deferred judgment nevertheless
> "has [a] conviction" for purposes of the
> eligibility bar in section 16-22-113(3)(c). If a
> successfully completed deferred judgment
> counts as a "conviction," McCulley is ineligible
> to petition to deregister because he "has more
> than one conviction" for unlawful sexual
> behavior. But if, like subsection (3)(b)
> discussed in *Perry*, the context of subsection
> (3)(c) indicates that a "conviction" does not
> include a successfully completed deferred
> judgment, then McCulley has only one
> conviction for unlawful sexual behavior — the
> misdemeanor to which he pled guilty — and he
> is therefore eligible to petition the court for an
> order discontinuing his requirement to
> register.

*Id.* at ¶ 27.  The supreme court concluded that because McCulley

had successfully completed the deferred judgment and sentence for

his felony sexual assault conviction, he no longer "has more than

one conviction."  In reaching this conclusion, the court

characterized the analysis of the panel's decision in *Perry* as

"instructive and persuasive" *id.* at ¶ 28, and relied on *Hafelfinger* for

the proposition that "a defendant [who has successfully completed a

deferred sentence and adjudication] generally is no longer 'convicted,'" *id.* ¶ 14 (citing *Hafelfinger*, 674 P.2d at 377 n.3).

¶ 50     Applying the reasoning of *Hafelfinger*, *Perry*, and *McCully*, we disagree with the district court's conclusion that the term "conviction," as used in section 13-21-131(4)(a), includes a successfully completed deferred judgment and sentence.

### G.     ELEIA's Separate Expansive Definition of Conviction

¶ 51     Hudnall and Palmas point to section 24-31-904(1)(a)(I), C.R.S. 2025, which was also passed as part of ELEIA, to support the conclusion that the phrase "was convicted," as used in section 13-21-131(4)(a), was not intended to apply to a successfully completed deferred judgment and sentence.  Section 24-31-904 addresses the circumstances in which the Peace Officers Standards and Training (P.O.S.T.) board[4] must permanently revoke a peace officer's certification.  In this context, consistent with ELEIA's broad purpose to protect the public against peace officers' violating persons rights under article II of the Colorado Constitution, section 24-31-904(1)(a)(I) provides, in part, that revocation is required if

---

[4] The P.O.S.T. board serves to certify and discipline peace officers for certain conduct.  *See* § 24-31-904, C.R.S. 2025.

"[t]he P.O.S.T. certified peace officer is convicted of or pleads guilty or nolo contendere to a crime involving the unlawful use of physical force." In this context, the General Assembly did not use the word "convicted" in isolation, but rather added words to make sure that the revocation requirement applies not only to convictions but also to pleas of guilty and nolo contendere.

¶ 52    As Hudnall and Palmas also note, the General Assembly's reference to guilty pleas in section 24-31-904(1)(a)(I) would be superfluous if the term "conviction," in isolation, included all pleas of guilty — which is the interpretation the County relies on to conclude that Lucero was convicted when he pleaded guilty to the misdemeanor and received a deferred judgment and sentence, even though he successfully completed the sentence.

¶ 53    The County's brief does little to address the impact of section 24-31-904(1)(a)(I)'s additional language when considering the General Assembly's decision to use only "was convicted" in section 13-21-131(4)(a). Its sole argument on the issues is that Hudnall and Palmas overlook "another important aspect of section 904(1) — the term [convicted] is not defined in that statute either."

25

¶ 54    But this argument is nonresponsive. The salient point is that, absent a controlling definition of convicted, section 24-31-904(1)(a)(I) used supplemental language to extend that term to cover other types of criminal dispositions — like a guilty plea — that do not always result in the entry of a conviction as that term is used in other circumstances.

¶ 55    In sum, the General Assembly's use of the phrase "was convicted," without reference to a deferred judgment and sentence, coupled with its decision to use broader language addressing other criminal dispositions in section 24-31-904(1)(a)(I), supports a conclusion that the phrase "was convicted" in section 13-21-131(4)(a) was not intended to encompass a successfully completed deferred judgment and sentence.

### H.    Other Statutes that Define Conviction to Include a Deferred Judgment and Sentence

¶ 56    Hudnall and Palmas argue that when the General Assembly intends to apply the term "conviction" to a deferred judgment and sentence, it has used broad language that directly reflects that purpose. As an example, they point to section 23-5-124, C.R.S. 2025, which generally prohibits a person who "is convicted of a riot

26

offense" from enrolling in a state-financed institution of higher education for a period of twelve months following the date of conviction. In that context, section 23-5-124(6)(a) defines the term "convicted" to include "having received a verdict of guilty, pleaded guilty or nolo contendere, or having received a deferred judgment and sentence."

¶ 57    Similarly, they cite statutes related to the licensing and regulation of mental health professionals. In that arena, the General Assembly enacted section 12-245-224(1)(a), C.R.S. 2025, which prohibits certification of a person who "[h]as been convicted of or pled guilty or nolo contendere to a felony or to any crime related to the person's practice, or received a deferred sentence to a felony charge." Here again, the General Assembly used express language, alongside the word "convicted," to make clear that it intended to include a deferred judgment and sentence within the purview of conviction.

¶ 58    The County does not respond to these citations and arguments and does not otherwise explain why the General Assembly has expressly referred to a deferred judgment and sentence when seeking to include it within the term "convicted."

¶ 59    The cited statutes provide additional support for the conclusion that when the General Assembly intends to use a more expansive definition of convicted to include a deferred judgment and sentence, it says so expressly.  And the absence of that language in section 13-21-131(4)(a) indicates the General Assembly did not intend it to apply to a successfully completed deferred judgment and sentence.

I.    Past Tense of "Was Convicted"

¶ 60    The County attempts to distinguish *Hafelfinger*, *Perry*, and *McCulley* by noting that the General Assembly used the phrase "was convicted" in section 13-21-131(4)(a) rather that "is convicted," which was the statutory language at play in *Perry*.  The argument has some initial appeal because the term "was" typically signifies past tense.  *See* Merriam-Webster Dictionary, https://perma.cc/NQE6-NDLS (defining "was" as the "past tense first- and third-person singular" form of "be").

¶ 61    But in the context of a deferred judgment and sentence, the phrase "was convicted" is not clear.  Does it mean that the defendant was once convicted, as the County urges, or that he was

28

convicted even after he successfully completed the deferred sentence?

¶ 62 *McCulley*, *Perry*, and *Hafelfinger* show that appellate courts have recognized that the term "convicted" is fluid in the context of a deferred judgment and sentence. This fluidity can be addressed by including specific language that clarifies the General Assembly's intent whether it is using the term "convicted" to encompass a deferred judgment and sentence. And, as discussed in Part III.F, .G, and .H, *supra*, the General Assembly did not include such a definition in section 13-21-131(4)(a) or elsewhere in ELEIA. To the contrary, in ELEIA it used broad language — in addition to the term "convicted" — when it intended to encompass all sentences resulting from a guilty plea. *See* § 24-31-904(1)(a)(I).

¶ 63 Moreover, even if it does not provide a separate stand-alone provision addressing the intended scope of the term "convicted," the General Assembly has demonstrated its ability to use broad language that accounts for the temporal fluidity of the term "convicted" in the context of a deferred judgment and sentence. *See, e.g.*, *People v. Allaire*, 843 P.2d 38, 41 (Colo. App. 1992) (construing the phrase "previously convicted" as used in a prior

29

version of the statute defining the offense of possession of a weapon by a previous offender to include a deferred judgment and sentence, regardless of whether the sentence was successfully completed); *cf. Hafelfinger*, 674 P.2d at 377, n.3 (construing the phrase "has a record of conviction" to include having entered into a plea to a deferred judgment and sentence but not a successfully completed deferred judgment and sentence).  The General Assembly did not include such language in section 13-21-131(4)(a).

¶ 64     Heeding the supreme court's reasoning in *McCulley*, we also note that the County's urged interpretation would lead to an absurd result.  Consider a defendant who was convicted of a crime after a trial.  If the defendant appealed their conviction, and the conviction was overturned on appeal, the County's interpretation of section 13-21-131(4)(a) would mean that the defendant "was convicted" regardless of the subsequent reversal of that conviction after a successful appeal.  *See McCulley*, ¶ 31 ("[I]f the phrase 'has [a] conviction' for purposes of []section [16-22-113](3)(c) includes 'having received a verdict of guilty by a judge or jury' regardless of the ultimate disposition of the case, then even a person whose

guilty verdict is overturned on appeal for insufficient evidence still 'has [a] conviction' for purposes of the bar in subsection (3)(c).").

¶ 65    Similarly, the County's interpretation of "was convicted" would require us to conclude that Lucero was convicted of a crime even though his guilty plea was withdrawn, no judgment of conviction was ever entered, and all charges were dismissed.  This absurd outcome can be avoided by recognizing that the status of a deferred judgment and sentence is fluid until such time as the sentence is successfully completed or revoked.  *See Tucker*, 211 P.3d at 711 ("We avoid statutory interpretations leading to absurd or illogical results.").

### J.    Legislative Intent Arguments

¶ 66    Because the meaning of "was convicted" under section 13-21-131(4)(a) is ambiguous, the County also urges us to consider a statement made during a discussion of the bill that added the last sentence of section 13-21-131(4)(a).  Rebecca Wallace, an attorney involved in drafting the legislation, made the statement in response to a question from Representative Adriene Benavidez:

> Rep. Adrienne Benavidez: . . . You know often times . . . when there's not indemnification there may be no remedy for . . . the victim in

31

the case unless there's a showing against the agency with regard to . . . lack of training or supervision so how does this amendment impact that if somebody was held criminally liable?

Chair: Ms. Wallace.

Rebecca Wallace: Thank you, Madam Chair. Thank you, Representative Benavidez. . . . It's a very good question that you have. I think what this amendment does is it recreates the reality that we live in right now, despite the fact that it will leave some victims . . . without justice. And just so . . . right now, when you bring a civil rights case under federal law here in Colorado, 99% of the time the government entity will indemnify. It does not matter if the actions are willful and wanton. It does not matter if you are shooting somebody in the back who is laying down on the ground. They will indemnify. I know from personal experience, and I also know from . . . the enormous group of civil right lawyers that I worked with in developing some of the . . . thoughts behind this provision. And so, the indemnification provision that exists right now in the law really is just codifying what's already happening but it's hopefully to give some sense of peace to the peace officers. That's the goal of it. But the one time that we see almost all the time non-indemnification is when the individual, the peace officer, is convicted of a criminal offense. . . . I don't like this amendment, but I understand . . . that there's been a goal to sort of recreate what's available in federal law, excluding qualified immunity here in state law, and not to increase the liability and so this was a

> compromise amendment but it will leave
> victims whose . . . when the peace officer has
> committed a criminal violation, it will leave
> them without justice.

Hearings on S.B. 20-217 before the H. Fin. Comm., 72d Gen. Assemb., 2d Reg. Sess. (June 10, 2020).

¶ 67 The County argues that Wallace's statement indicates that the General Assembly understood that, if the third sentence of section 13-21-131(4)(a) was included, a victim might sometimes be left without complete justice. From this broad statement, the County argues that the General Assembly intended to include a deferred judgment and sentence within the purview of "was convicted." We conclude this is a leap too far.

¶ 68 While we may consider the legislative history in interpreting an ambiguous statute, § 2-4-203(1)(c); *Nieto,* ¶ 13 ("[W]here a statute is ambiguous — that is, reasonably susceptible to more than one interpretation — we turn to other interpretive aids to discern the legislature's intent."), we must be careful in doing so, particularly when the cited statement was made by a non-legislator, *Epic Sys. Corp. v. Lewis,* 584 U.S. 497, 523 (2018) (noting that "legislative history is not the law" and citing various authorities cautioning

against the overly broad use of legislative history, particularly comments based on different questions than those before the court).

¶ 69    Even if we were to assume that the statement of a non-legislator at a committee meeting could be reasonably interpreted as a reflection of the General Assembly's intent, Wallace's statement is completely silent on the issue of whether the phrase "was convicted" is intended to apply to a successfully completed deferred judgment and sentence.  At most, the statement reflects an effort to eliminate the employing agency's responsibility to indemnify a peace officer if the officer was convicted of a criminal offense.  But that conclusion is already clear from the language of the third sentence, a proposition that neither party disputes.[5]

¶ 70    Interestingly, Wallace's statement refers to federal civil rights claims as an analog to support the conclusion that, under existing federal law, an employing agency will not indemnify a peace officer

---

[5] As previously noted, the parties dispute whether the third sentence relieves the employing agency from any obligation to satisfy the uncollectible portion of the judgment when the peace officer was convicted of a criminal offense for the underlying conduct.  But given our disposition, we do not address that issue.

convicted of a crime.  Neither party addresses whether the phrase

"was convicted" encompasses a successfully deferred judgment and

sentence under federal civil rights law.  But the United States

Court of Appeals for the Tenth Circuit has addressed the scope of

the term "conviction" in the context of a claim under 42 U.S.C.

§ 1983.  *Lessard v. Cravitz*, 686 F. App'x 581 (10th Cir. 2017).

¶ 71　　Lessard brought a claim alleging that his federal constitutional

rights were violated when he was charged with and convicted of

stalking.  *Id.* at 585.  The conviction was entered after Lessard

pleaded guilty and received a deferred judgment and sentence; he

then successfully completed the deferred judgment and sentence,

resulting in the withdrawal of his guilty plea and dismissal of the

stalking charge.  *Id.* at 584.

¶ 72　　To prevail on a claim for malicious prosecution under § 1983,

a defendant generally must demonstrate that the criminal action

terminated in his favor.  *Id.* at 586.  But a convicted defendant may

still bring a § 1983 claim provided their conviction falls within

certain exceptions recognized in *Heck v. Humphrey*, 512 U.S 477,

487 (1994) (A defendant must prove "that the conviction or sentence

has been reversed on direct appeal, expunged by executive order,

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.").

¶ 73    Because Lessard successfully completed his deferred judgment and sentence, the Tenth Circuit, applying Colorado law, concluded that he had no conviction for stalking and therefore did not need to satisfy the *Heck* exceptions:

> Having completed a deferred judgment and sentence under Colorado's deferred-judgment statute, which resulted in the withdrawal of his plea and the dismissal of the criminal charge against him, Mr. Lessard has no existing "conviction" that could be affected by his malicious-prosecution claim. His claims are thus not subject to the *Heck* bar. *Cf. Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1095 (10th Cir. 2009) (holding *Heck* did not bar § 1983 claim claiming plaintiff's signature had been forged on agreement resulting in deferred prosecution, because under Kansas law, there was no related underlying conviction that could be invalidated by [a] § 1983 [suit]).

*Lessard*, 686 F. App'x at 587.

¶ 74    Thus, to the extent that Wallace's statement suggests that federal civil rights law is germane to our interpretation of "was convicted" under section 13-21-131(4)(a), the *Lessard* decision suggests that Lucero was not convicted.

36

### K. Policy Arguments

¶ 75    The County posits various public policy arguments urging us to adopt its contention that the phrase "was convicted" should be deemed to include a deferred judgment and sentence. Specifically, the County argues that the interpretation Hudnall and Palmas urges would lead to absurd and unworkable results, favors a private interest over a public interest, and creates unmanageable liability for public entities. We address the first of these arguments but decline to address the second and third because they present policy arguments and line-drawing that are the General Assembly's province. *See Klabon v. Travelers Prop. Cas. Co. of Am.*, 2024 CO 66, ¶ 40.

¶ 76    The County argues the interpretation of section 13-21-131(4)(a) urged by Hudnall and Palmas would be unworkable because the parties would not know if the peace officer was convicted until completion of the deferred judgment and sentence. The period of deferral may continue for up to two years on a misdemeanor and four years on a felony. § 18-1.3-102(1)(a). This delay, the County argues, would be too difficult to administer. We are not persuaded.

¶ 77    As Hudnall and Palmas point out, when a criminal conviction enters after a trial the defendant generally has the right to appeal that conviction.  The trial process alone frequently takes a year or two to complete.  And the criminal appellate process frequently takes multiple years.  Thus, a deferred judgment and sentence is often completed in a shorter time than a criminal case that proceeds to a trial and appeal.  This case is illustrative.  Lucero's deferred judgment and sentence was terminated, his plea withdrawn, and the charges dismissed within a year of his guilty plea.

¶ 78    Given these practical realities, we do not see how the interpretation of "conviction" urged by Hudnall and Palmas is any less workable than the County's proposed interpretation.

¶ 79    Although not mentioned in its answer to the cross-appeal, in its opening brief the County asserts that holding it liable under any portion of section 13-21-131(4)(a) would deprive it of due process by denying it an opportunity to challenge the merits of a plaintiff's claims until after a judgment was entered.  While acknowledging that it did not assert any constitutional arguments below, the County argues that section 13-21-131(4)(a) violates its

constitutional rights to procedural and substantive due process. To the extent that the County is attempting to assert that section 13-21-131(4)(a) is unconstitutional on its face or as applied, we decline to address the assertion. *O'Quinn*, 250 P.3d at 630.

¶ 80    While the constitutional arguments are unpreserved, the County did argue in the district court that it was unfair and unreasonable to hold it liable because it had not been joined as a party to the lawsuit until after the judgments were entered against Lucero. True, the County was not joined as a party until after the judgments were entered. But it does not follow that the County had no opportunity to participate in these cases before the entry of those judgments.

¶ 81    As previously explained, the County had full knowledge of its potential liability before these suits were filed yet chose not to appear in the action. In short, the County's contention that it was caught off guard about its potential liability or denied the opportunity to contest Hudnall's and Palmas's claims is unfounded.

¶ 82    Moreover, although the County's liability remained contingent pending the outcome of the district court proceedings, nothing prevented it from petitioning to join the case as an interested party,

*see* C.R.C.P. 20 (addressing permissive joinder).  Similarly, the County could have tendered an indemnification defense on behalf of Lucero while reserving its rights concerning any obligation to indemnify Lucero for any portion of the judgment entered against him.  A similar process is followed in myriads of cases involving an insurance company tendering a defense for a defendant while reserving the right to dispute its liability for any judgment that may enter.  *See, e.g., Shelter Mut. Ins. Co. v. Vaughn*, 2013 COA 25, ¶ 7 ("If an insurer believes that it has no obligation to indemnify — for example, if it believes the insured's actions were intentional and outside policy coverage — it can defend its insured under a reservation of rights," which "permits the insurer to fulfill its duty to defend, while also allowing it to dispute its duty to indemnify in a later declaratory action, if a court finds the insured liable.").

¶ 83    Instead of pursuing these available opportunities, the County elected not to participate until after judgments had been entered against Lucero.  Having elected that course of action, the County cannot now complain that it had no opportunity to participate or protect its interest in the underlying cases.

¶ 84    Next, the County points to a decision by a division of this court to support its contention that the County's obligation is limited to indemnification of Lucero, and therefore Hudnall and Palmas had no ability to make a direct claim against the County. *See Ditirro v. Sando*, 2022 COA 94.  That reliance is misplaced.

¶ 85    In interpreting "the indemnification language in section 13-21-131(4)(a)," the division in *Ditirro* noted that the County's indemnification obligation imposed on a peace officer's employers is analogous to an insurance company's indemnification obligation under an insurance policy.  *Id.* at ¶ 37.  The division then reasoned,

> While section 13-21-131(4) allows a peace officer to obtain indemnification from the peace officer's employer under certain circumstances, it only provides a remedy for peace officers, at least before the peace officer has incurred any liability, or any judgment or settlement has been entered against the peace officer, under the statute.

*Id.* at ¶ 38.  After reaching that conclusion, the division stated: "We offer no opinion on whether a plaintiff may bring an action against the employer of a peace officer after the peace officer has incurred liability under section 13-21-131(1) or after 'any judgment or

settlement [is] entered against the peace officer' for a claim arising under the statute." *Id.* (quoting § 13-21-131(4)(a)).

¶ 86 Thus, *Ditirro* does not support the County's contention that a party may not, under section 13-21-131(4)(a), pursue a peace officer's employer for the uncollectible portion of a judgment entered against a peace officer who was not convicted of a crime.

¶ 87 For these reasons, we perceive no absurdity or other unreasonable outcome resulting from the conclusion that the phrase "was convicted" in section 13-21-131(4)(a) does not extend to a successfully completed deferred judgment and sentence.

¶ 88 We decline to address the County's remaining policy arguments because they present policy decisions and the balancing of competing interests that are the prerogative of the General Assembly rather than the courts. *See Klabon*, ¶ 40; *Ruybalid v. Bd. of Cnty. Comm'rs*, 2017 COA 113, ¶ 18 ("Whatever the merits of these competing arguments, matters of public policy are better addressed by the General Assembly, not us."), *aff'd on other grounds*, 2019 CO 49.

## IV.  Summary

¶ 89     It is important to reiterate that this decision resolves the question of whether a successfully completed deferred judgment and sentence constitutes a conviction under section 13-21-131(4). Because we conclude that it does not, we need not, and do not, resolve the parties' differing interpretations regarding the scope of a public entity's obligation to satisfy a judgment under section 13-21-131(4)(a) when a peace officer is convicted of a criminal violation for the conduct that gave rise to the judgment.

## V.  Disposition

¶ 90     The judgment is affirmed — albeit on alternative grounds than those relied on by the district court.

JUDGE FOX and JUDGE HARRIS concur.